JEREMIAH T. SPEIGHTS *vs.* WILLIAM PETERS.—*June* 1851.

It must be a strong case that will justify the appointment of a receiver. The court never exercises this power where it is likely to produce irreparable injustice, or injury to private rights, or where there exists any other safe or expedient remedy.

But in many instances, especially in partnership transactions, where, after dissolution, the parties cannot agree upon an adjustment, and the funds are in the hands of one partner alone, cases must arise for the appointment of a receiver.

Two parties agreed as joint owners of a vessel to carry freight from *Baltimore* to *San Francisco*, and a portion of the cargo was also a joint concern. The partnership was dissolved by a sale of the vessel at the latter place, and one of the partners then filed a bill for an adjustment of accounts, charging that large proceeds of the adventure were remitted to *A. & Co.* of *Baltimore*, in whose hands they now are, and avers that they will be lost to the concern if permitted again to come to the hands of the defendant. The answer denies that these funds belong to the concern, but are defendant's own private property. HELD: As a final adjustment between the parties of all accounts relating to the concern, can alone determine the rightful ownership of these funds, it is proper that a receiver should be appointed, and continued until such adjustment is made.

It is not always a necessary condition to the appointment of a receiver, that the court should be satisfied that the property is in imminent peril. Where the fund is *prima facie*, the proceeds of a partnership, it is but a provident exercise of equity power to place it under the care of the court.

If one partner in the ordinary course of trade, seeks to exclude another from taking that part in the concern which he is entitled to take, the court will grant a receiver.

After dissolution has taken place, or is intended, if one partner acts against the interest of the others, or carries on trade with the partnership funds on his own account, or in any other manner excludes his copartner from that share to which he is entitled in winding up the concern, equity will appoint a receiver.

Against the legal title, or a strong presumptive title in the defendant, the court interferes with great reluctance, and only where the property is in danger of being materially injured.

APPEAL from the equity side of *Baltimore* county court.

The bill in this case was filed by the appellee, the complainant, against the appellant, as defendant, on the 16th of December, 1850, for an account, and the appointment of a receiver.

It alleges that complainant and defendants were joint owners of the barque *Tarquin,* complainant owning three-fourths, and defendant one-fourth, for which he had paid in cash, $200, and gave his note, now held by complainant, for $1487.40, the balance of his one-fourth. It was agreed that the vessel should be sent to *San Francisco,* on joint account, and that defendant should go n her as master and consignee. It was further agreed that the complainant should make no charge for his services about the business of the barque in *Baltimore,* and the defendant none for such services as he might render abroad. On the 22nd of January, 1851, the barque sailed under defendant's command, with a freight list of upwards of $10,574, and arrived safely at *San Francisco,* where defendant received on account of freights, $6047.72. It further charges, that defendant finding he could make money by the barque, and before her cargo was discharged, put her up for sale, and became the purchaser of her for the nominal sum $1750, after which he sold her for $3500, or more, to persons unknown, and now claims the benefit of that sale for himself. That this transaction was unauthorised by the complainant, but defendant received the money, and with it and the freights, went on speculating, and made large profits, so that instead of remitting to and accounting with complainant, he has returned home with some $10,000, for the larger part of which he is indebted to complainant. A portion of this money, the bill alleges, is in the hands of *Adams & Co.,* and others, which will be lost if it goes again into the hands of defendant. The bill then further avers that the adventure being a joint one, and defendant having so conducted himself fraudulently, a receiver ought to be appointed to take possession of the funds, in controversy, till the accounts be settled; that in such accounts, defendant ought to be charged with the value of the barque, as at $8000, he well knowing an offer to that amount had been made for her. That defendant has refused to pay, and has rendered a false and fictitious account. The prayer is for an account, a receiver, and further relief, &c.

The court appointed a receiver, and defendant filed his an-

60    v.9

swer on the 23d of December, 1850, in which he admits the joint ownership in the proportions alleged, and that complainant held his note, as stated, with interest, from January, 1850, secured by a mortgage of his interest in the vessel. He denies that he was to charge nothing for his attention to the business of the voyage in *California*. He says, the cargo was a general cargo, of which more than half was consigned to him by the owners, and the residue to other consignees, except a small part which went on the vessel's account, and of which he had the control. That the barque went to sea, with a freight list of $10,326, a copy of which is filed, marked exhibit G. He alleges, that complainant received $1000 passage money, and that $1008.71 was lost on freight. He admits that he received $5086.09 freight, in *San Francisco*, as per exhibit A, of which he alleges he furnished complainant a copy. $5,208.20 freight, payable in *Baltimore*, were adjusted, he says, with complainant, as per exhibit B, of which he alleges he gave complainant a copy. He then alleges, that when he left *Baltimore*, he believed himself agent of the barque, with full control over her, but on arriving at *San Francisco*, he learned, with much surprise, that complainant had consigned her to *James Lippincott*, to whom he had executed a power of attorney to sell the whole of defendant's interest in her. That *Lippincott* had left *San Francisco*, and had left the sale of the vessel in the hands of a sub-attorney, but had appointed no consignee. That he, though mortified by such conduct from the complainant, went on, nevertheless, to do the best he could, and to facilitate the sale, authorised said sub-attorney to sell his one-fourth also, but denies that the sale was by his wish or procurement, and avers, that he only submitted, and unwillingly, to complainant's overruling orders. He attended the sale without intending to buy, and bought in the vessel at $1,750, merely to save himself, and in good faith, and sold her for $3,500 afterwards, merely by accident, to a party of miners. He denies that he speculated with the proceeds of the vessel, freights or cargo, and then makes a statement of payments he made on account thereof. That he paid over complainant's part of the proceeds of sale,

as well as the amount of his own note of $1,387,50, to the sub-attorney of *Lippincott*, which he believes complainant has received. He denies that he owes complainant anything, except $104.59, of which he has made a legal tender, and avers that he has accounted fully and fairly. He admits funds in the hands of *Adams & Co.*, but denies that complainant has any thing to do with them, or that they would be in any danger in his hands. He denies fraud, &c., and says, he ought not to be charged with the money the barque sold for, and prays to be dismissed, and that the receiver be discharged.

A motion was then made, that the receiver be discharged, and affidavits and other testimony taken, the purport of which sufficiently appears in the opinion of this court.

The court below, (LE GRAND, J.,) overruled the motion to discharge the receiver, and from this order, as well as the order appointing the receiver, the defendant appealed.

The cause was argued before DORSEY C. J., SPENCE, MARTIN and FRICK, J.

By WM. J. WARD, and MAYER for the appellants, and
By WALLIS for the appellee.

FRICK, J., delivered the opinion of this court.

This appeal involves the propriety of appointing a receiver under the circumstances charged in the complainant's bill, and the refusal of the court upon motion of the defendant, (the present appellant) to discharge the receiver so appointed upon the answer and testimony subsequently filed in the cause.

It is difficult to approach this issue between the parties, without encroaching upon matters which are more appropriately the subject of consideration in the further progress of the cause. The accounts between them, are a part of the record before us, but of course they come under review here only incidentally as a basis for the relief sought in the appointment of a receiver. We desire carefully to abstain from the intimation of any opinion, which involves the correctness of these char-

ges or the statements set up by either party, in support of the rights which they respectively claim, while we proceed in a re·view of the case presented, briefly to disclose the grounds on which we think the court below were fully justified in the course of proceeding adopted.

It is true, as it has been strennously urged, that it must be a strong case, that will justify this ultimate resort of a court of equity. It is a high power never exercised, where it is likely to produce irreparable injustice or injury to private rights, or where there exists any other safe or expedient remedy. Still in a variety of instances, especially in partnership transactions where the parties after dissolution of their connection, cannot agree upon the adjustment, and the property or funds in dispute are in the hands of one partner alone, each having an equal right to the control of the property, cases must necessarily arise, where the interest of both can only be properly secured by the intervention and appointment of a receiver.

Is the case presented here one that warrants this interposition of a receiver between the parties? It originated in a joint adventure, in which the parties engaged as owners of a barque, to carry freight from *Baltimore* to *San Francisco* in *California*. The answer distinctly admits the joint ownership of the vessel, and that a portion of the cargo was also on joint concern of the parties, and the accounts filed in the cause as exhibits, present them as partners by the specific character of the adventure itself. The partnership was dissolved by the sale of the vessel at *San Francisco*; and the bill is now filed to obtain an adjustment of the accounts between them as a proper subject for the action of a court of equity.

The bill charges that a large amount of the proceeds of the adventure, was remitted by the appellant from *San Francisco*, and was placed in the hands of *Adams & Company*, and others of the city of *Baltimore*, where it remained at the time of filing the bill, and affirms the belief that if these proceeds come to the hands of the appellant, they will be lost to the concern. The answer admits that funds were so remitted, but that they belong to the appellant, and denies that if in his

hands they would be in any danger of being lost, or that the appellee has any claim to them.

Are these then the funds of this partnership, or rather the proceeds of this adventure? The complainant asserts that they are, the respondent claims them as his own private funds. But it can scarcely be doubted from the complexion of the whole case presented, that if so, they can only be his as the results of this adventure, and as such a portion of the proceeds. A final adjustment between the parties of all accounts relating to the concern, can only determine the rightful appropriation, and in the meantime, under the existing relation between the parties, to discharge the receiver and put these funds at the disposition of the appellant, would, we think, create just apprehension of danger to the rights of the other party.

We find, so far as the record discloses the means of the appellant, that he was limited in his resources at the commencement of the adventure. He paid but two hundred dollars on account of his one-fourth interest in the barque, and executed a note and mortgage to secure the balance. He was then in debt for the actual property, the proceeds of which are now in controversy. There is no proof or pretence that he owned or possessed any other funds or property, than what he derived from his part of the adventure. In one of his letters to the appellee, he represents himself as poor, and commends his family in his absence to the care and assistance of the appellee. Thus entirely without means of his own at the time of his departure, the first impression naturally suggests, that what he brought home with him or remitted from *San Francisco*, was altogether the proceeds of this joint adventure. We do not mean to say it will so result on the final investigation. For admitting the correctness of his accounts, the balance resulting would be adequate to account for the possession of funds on his private account. But the legality and justice of the claims in this account, to a very large amount, denied by the appellee, are the very points in controvery, and if not ultimately maintained, to that extent, remain the funds of the partnership. Indeed until the final decision between the parties,

all the funds coming to the hands of the appellant as growing out of this adventure, must be so considered. And in the absence of all proof that the defendant possessed any private resources at *San Francisco*, and uncommitted as to the final result of these accounts, we are at least warranted, for the purpose of the present application to the court, in treating the fund in controversy as assets of the partnership.

. Now, has the appellant committed any breach of contract or duty as a co-partner, which justifies the interference of this court? Without intimating any such positive violation of duty, as would anticipate the ulterior judgment of the court upon this charge of the bill, it is at least manifest, that in the transactions at *Sun Francisco*, he acted precipitately and under great excitement, which, however, we do not mean to say was without provocation. But, by his own admission, he assented to it, if he did not coerce a sacrifice of the vessel, which he himself asserts he could have sold at *Panama* for three times the sum obtained at *San Francisco*. He bought the vessel himself, and the agent of the complainant, in his testimony, charges him expressly with precipitating the sale before the cargo was discharged. The fair character of the purchase, and the price paid, seems to be fully sustained by other testimony. Yet he sold the vessel soon after for thrice the amount. How far the fiduciary tie between him and his partner should have restrained him from engaging in the purchase, or whether he was right in entering into competition with other purchasers, under the circumstances, is not now to be determined. Whether that purchase is to be considered for his exclusive benefit, or whether he is accountable, upon the resale, at the advanced price, must abide the ultimate decision of the case. At all events, the complainant claims now to stand in that relation to the disposition of the property. If this should be established, it is difficult to conceive, as the answer insists, that the appellant could make any remittance home on his own account, unless from speculations in the common fund, as the bill charges. The appellant, it is true, claims the fund remitted, to have been his own private property, but there is no explanation of

the manner in which it was acquired; and this averment of the answer, is at least weakened by the testimony and other pregnant circumstances in the case.

It is further a part of the charge against the appellant, that while he agreed that the services of each to the concern was to be reciprocal and without charge, he has detained out of the joint fund large sums claimed for primage, wages, and collecting freights, which he is not entitled to withhold from the assets. And this agreement is supported by evidence of his own declarations to that effect. That a change of the relations between them, after his departure, and the subsequent events at *San Francisco*, might not, in equity, modify or release the arrangement, we do not mean to say. But so long as the matter remains in dispute, all these sums for the purposes of the controversy, must be considered as part of the joint assets, and so far neutralise the averment of the appellant, that they are his private property, until he establishes it by the future decision of the court, when it comes properly before them. The fund being then already in the hands of a receiver, and the whole of the accounts between the parties, being under the control and investigation of the court, we think there was sufficient shown to induce the court to retain the receiver until their final determination; and we can see no immediate mischief or irreparable injury to the appellant from this course.

It is assumed by the appellant, that the court, as preliminary to the appointment of a receiver, must also further be satisfied, that the property is in imminent peril. This, however, is not always a necessary condition to the action of the court. Against the legal title, or a strong presumptive title in the defendant, the court would interfere with great reluctance; and only where the property was in danger of being materially injured or lost. But in respect of a fund which is claimed, and is *prima facie* the proceeds of a partnership, it is but a provident exercise of equity power to place the property under the care of the court. It has been laid down by *Lord Eldon*, that " if one partner, in the ordinary course of trade, seeks to exclude another from taking that part in the concern which he is entitled to take, the

court will grant a receiver." 1 *Swanst*, 481. And "whenever a dissolution has taken place, or is intended, if one partner behave unrighteously against the interest of the others, or carries on trade with the partnership effects on his own account, after the dissolution, or in any other manner excludes his copartner from that share to which he is entitled in winding up the concern," it presents a case for a receiver. *Collyer on Partnership,* -sec. 354.

Such is the *prima facie* case here presented by the bill, and not sufficiently repelled, at least until the defendant makes out by proof a clear right to the credits which his accounts claim for him. The proof, in part, indicates, (we do not say conclusively,) that it was agreed between the parties, that a portion of the charges here insisted upon, are excluded by the terms of the partnership. The appellant may still be able to maintain them at a final hearing. We pass no opinion upon their validity; we have no right to do so in this stage of the proceeding. But we decline to rescind the order, believing the fund to be in proper custody for the present, without intending the slightest imputation or suspicion of the integrity of the defendant, which is not necessarily impeached by this decision of the court. We believe the case to be fully covered by the law that applies to it, and the order of *Baltimore* county court in the premises is affirmed.

ORDER AFFIRMED.