My brother Tuck concurs in this opinion, and of course, the affirmance of the judgment must follow.

*Judgment affirmed.*

---

# William G. Furlong, John Miller and others, *vs.* John T. Edwards.

An injunction was granted and a receiver appointed before answer, upon a bill by a judgment creditor, who, after exhausting his remedies at law, was seeking to enforce by bill in equity, his judgment lien, against personal property covered by a mortgage. The only allegations of the bill authorising this equitable interference were, that the mortgagor, the judgment debtor, was in possession of the property, selling and converting the same to his own use, that he was insolvent and that complainant was thereby in danger of losing his debt. These charges were unequivocally and explicitly denied by the answer, but the court below upon bill and answer without proof on either side, refused to dissolve the injunction and discharge the receiver. Upon appeal it was HELD, that under these circumstances the injunction should have been dissolved and the receiver discharged.

The power of a court of equity to appoint a receiver is a most delicate one and should be exercised with extreme caution, and only under special and peculiar circumstances requiring summary relief.

A court of equity always reluctantly interferes against the legal title, and only in cases of fraud clearly proved, and of imminent danger.

In this case the mortgagee, the legal owner, was in possession of the property and no fraud or improper conduct was imputed to him; there was, therefore, no ground to take the property from him by the appointment of a receiver.

The issuing and levying of *fieri facias* secures, for the creditor, a priority or lien upon the debtor's equitable interest in personal property covered by a mortgage, and this lien dates from the time the execution was placed in the officer's hands.

If the mortgagee proceeds to dispose of and settle the estate as his duty requires him, by first paying off the incumbrance and then the creditor's execution, there is no need of chancery proceedings, but if he does not, equity, upon proper application, will compel him to do so.

This court will never encourage unnecessary litigation, nor will it treat an individual as in default of any legal duty, unless upon a case clearly made out showing such default.

There is nothing in the case of *Harris vs. Alcock,* 10 G. & J., 226, to warrant the proceedings in this case. The only purpose for which that case could be invoked, would be to authorise the court to enforce the equitable lien of the complainant, acquired against the mortgaged property by virtue of his levy.

The deed in this case provided:—1st, for the protection of the mortgagee as a creditor directly of the mortgagor; 2nd, for his protection as surety for other creditors of the mortgagor; and 3rd, for a restoration of the property to the grantor after these debts were paid. HELD, *per* MASON, J., that this deed was within the manifest design and spirit of the act of 1845, ch. 166, which requires *" trustees"* in deeds, for the benefit of creditors, to give bond.

APPEAL from the Equity Side of the Circuit Court for Allegany county.

William G. Furlong on the 31st of March 1852, executed a deed conveying all his property, consisting of a stock of goods in trade, notes, judgments, book accounts, and other evidences of debt, and household and kitchen furniture, to John Miller, to secure the sum of $1147, owing to said Miller, and to secure the payment of certain other debts owing by said Furlong to certain creditors named in the deed for which Miller had become security as endorser, amounting to $4835. This deed was upon condition that if Furlong paid to Miller the said $1147, on or before the 10th of April 1852, and to the other named creditors the amount due them on or before the 1st of June 1852, then the deed was to be void. Upon the failure of Furlong to perform these conditions Miller was to have the privilege, in his discretion, to take possession of the property, sell it on such terms, and in such manner as he should think proper, collect the debts, &c., and apply the proceeds to the payment of the sums secured by the deed, in such manner as he might think

right and proper, until they were fully paid, with all costs, commissions, &c., and the balance to pay over to the grantor.

Between the 22nd of May and the 24th of June 1852, John T. Edwards recovered four judgments against said Furlong, before a justice of the peace, amounting to the sum of $296.67, with costs, upon which he caused writs of *fi. fa.* to be issued, and levied on the property contained in the above deed. Failing to obtain satisfaction in this mode, by reason of the said deed, Edwards, on the 26th of June 1852, filed his bill in equity, the allegations of which are fully stated in the opinion of this court. This bill prayed for an injunction against Furlong and Miller, restraining them from selling or disposing of the property included in said mortgage, and the appointment of a receiver to take charge of said property, sell the same and apply the proceeds, first to the payment of the mortgage debt, and the surplus to the payment of complainant's claim on his executions.

Upon the filing of this bill and before the coming in of the answers, the court granted the injunction and appointed the complainant's solicitor a receiver, with leave to the defendants to move to rescind the order appointing the receiver and dissolve the injunction after answer and giving notice to complainant of such motion.

Furlong and Miller filed their answers on the 9th of July 1852, in which they admit complainant's judgments, the levy of the *fi. fa's* on the mortgaged property, the execution of the mortgage, that it embraced all Furlong's property, and that the property conveyed, was more than sufficient to pay the mortgage debt and complainant's claim, if properly managed. But they deny that Furlong is in possession of the mortgaged property or that he is selling and disposing of the same. On the contrary, they aver that Miller took possession of all the mortgaged property on the 1st of April 1852, and held possession thereof until the answers were filed, and that Furlong as the agent of Miller was selling the property, collecting the moneys on the notes and amounts conveyed by the mortgage and applying the proceeds to the payment of ex-

penses and to discharge the mortgage debt. They further deny that Furlong has applied any part of the money so received to his own use, or that any part of it has been improperly applied. That whether Furlong is insolvent or not will depend on the management of said property. They then make a full statement of the property conveyed, the sales and disposition thereof, and the application of the proceeds, showing that Miller had received and applied $915.

Upon the filing of these answers the defendants moved to dissolve the injunction and rescind the order appointing the receiver. Which motion being heard and argued, the court (PERRY, J.,) on the 23rd of July 1852, delivered the following opinion:

"In this case the complainant alleges that he obtained judgments against Furlong, and had executions placed in the hands of an officer, which have been levied upon goods in his possession. That the property levied upon had been mortgaged to Miller, and having no remedy at law, he can only obtain relief in equity by a decree to sell and pay, first, prior liens, and then his debt. The defendants contend, that the legal title being in Miller, by virtue of the mortgage to him, the court should not interpose by injunction or the selection of a receiver, and that the possession of the property was in Miller, and could not be handed over to another. That nothing but fraud and danger of losing the property, will authorise this court to act in the case, according to the doctrine announced in the various authorities, to which reference was made in the argument, particularly 1 *Bland*, 420, and 2 *Bland*, 31. These principles, urged by the defendants, are no doubt law, and applicable to all cases in which the parties in possession are either trustees by appointment or are the recipients of the rents for the benefit of others. In all such cases a court of equity will not turn a trustee out of possession, and give the right and possession to a receiver, unless there is an averment and proof of insolvency, and evident danger of loss. It is a power that should not be exercised against a trustee, whether he acquire his right by deed or by any other mode, without

very strong circumstances to justify it. To authorise a resort to injunction at the suit of one of a firm against his co-partners, there must be danger of loss, misapplication of funds, or some misconduct, otherwise the appointment of a receiver would become a vexatious proceeding, and totally unproductive of good. Each partner has at all times all his proper claims against his co-partners, and a resort to equity to establish that which is not denied or is not in danger, would be a great absurdity, and in the absence of averments a court of equity would not entertain a bill.

The principles insisted upon by the defendants are no doubt fully sustained by authorities, but I consider them confined to a different class of cases, and not applicable to this. The grounds upon which the complainant can go into equity, are because he has no remedy at law and has failed to obtain relief in any other court, he having availed himself of the only process by which he could obtain payment at law.

The right to file his bill takes place so soon as the officer having charge of the execution makes his return. Nothing in the nature of a lien or preference is acquired until the bill is filed. From that period he has priority over all other creditors at large. *McDermutt vs. Strong*, 4 *Johns. Ch. Rep.*, 687.

In the cases of trustees and partners, the rights of the *cestui que trusts* and partners are ascertained and known; unlike the complainant, who can only acquire a lien against an equitable interest of his debtor, by filing his bill in equity. If a partner or trustee acts in such way, as to show the property he holds is in danger, then, and not until then, will a court of equity interfere for the protection of those who may be injured. The creditor having no previous equitable right, and no remedy at law existing, and the debtor having an interest in the property, common justice requires that that interest should be disposed of to pay his debts, and that he and his mortgagee should not have the power to dispose of the property at such time and on such terms as they might deem right. In the absence of any control of this court, there is nothing to prevent a delay of the sale of the property for months or years.

The peculiar and useful jurisdiction of a court of equity has always been to give relief where none exists at law. The remedy of the complainant, known to the legal tribunals, having been exhausted, and having been unproductive and valueless to him, I cannot doubt the application of that policy to this case. The defendant in the executions, conceding that he is not possessed of property other than that which is embraced in the mortgage, the complainant would, without the aid of this court, be without remedy, notwithstanding the surplus, after paying Miller, might be abundantly sufficient to pay him. According to the case of *McDermutt vs. Strong*, a court of equity will aid creditors to reach the equitable interest of a debtor in goods and chattels, and I know of no mode, and none has been suggested, by which such aid can be given, except through the agents or officers of this court, and to permit the mortgagee to sell or to keep the property in such condition as he may think proper, would not be extending the aid of this court. If it should be left in his hands, what would be the predicament of the complainant? Is he to wait until a sale is to be made at the pleasure of the mortgagee? Can he compel him to dispose of it? Has this court any control? How, when or in what manner is the power of this court to be applied? Can the mortgagee, upon any principle, retain the surplus, if any, after the payment of his own debt? He can only retain out of the sales for himself, that is all he can do, not being the agent of the court or of the complainant.

Under such circumstances, would it be proper to leave the mortgagee in the unrestrained possession of the property, with the right of Furlong to claim all over and above that which pays Miller? And is there anything in the case which exempts it from the operation of the doctrine, as announced in the cases of *McDermutt vs. Strong*, 4 *Johns. Ch. Rep.*, 687, and *Harris and others, vs. Alcock*, 10 *Gill and Johns.*, 251? I cannot perceive the propriety of such a course, nor can I see any reason why such an exemption should exist. The legal title being in the mortgagee, does not prevent the application of the doctrine. He holds the mortgage but as a mere security

for his debt. *Jamieson vs. Bruce*, 6 *Gill and Johns.*, 71. *Evans vs. Merriken*, 8 *Gill and Johns.*, 39. And *Kent's Com.*, 159. All that the mortgagee can or ought to be permitted to do, is that which looks to the payment of his debt, and not for other purposes. Is it possible that a debtor can shield his property by a mortgage or any other transfer, by which the legal title and possession may pass out against the claims of creditors? A mortgage may be made conveying valuable property, and to secure a very small debt, and if the views of the defendants are sustained, then the debtor's interest would be exempt from liability. It is conceded no remedy exists at law, because the mortgagee is regarded as the owner of the property, but equity always looks upon such transactions in their real and true character, and respects the mortgagor as the owner, and his creditor as having a mere security for his claim. See the cases of *Jamieson vs. Bruce*, and *Evans vs. Merriken*. To give the defendant in the execution the right to receive the surplus or excess of the goods, after the payment of Miller, would be, in my view, in a great measure, an abandonment of the doctrine established in the cases of *McDermutt vs. Strong*, and *Harris vs. Alcock*, and would be, I fear, too great a temptation to commercial integrity, too easy a mode of locking up property and placing it out of the reach of creditors, and compelling them to that which would seldom secure a payment, the honor of the debtor.

It has been argued with much earnestness, that the complainant cannot ask the interposition of this court, without having paid or tendered the amount due under the mortgage. I do not esteem this an obstacle, and cannot require the complainant to show such to have been done. In the case reported in 10 *Gill and Johns.*, 251, the Court of Appeals say, that the proper course of proceeding is, to obtain a decree, without a clause of redemption, for a sale of the absolute property, first to pay off the incumbrances, and then the creditor's execution. This view of the court leaves no room for doubt upon the subject. The mode of proceeding is a sale of the property, and the application of the proceeds of such sale to the payment of

the incumbrances, before the complainant is permitted to participate.

The bill and answers show, that the property embraced in the mortgage is abundantly sufficient to pay the claims due Miller, and cannot be impaired by a sale through the authority of this court, and the only person who can be affected will be the defendant in the execution, the costs of which will fall on him. The complainant being entitled to the assistance of this court, I cannot feel that the accumulation of costs is a reason why the defendant's property should not be made responsible for his indebtedness. Costs always attend suits, either at law or equity, and are the consequence of the debtor's failure to comply with his engagements, and the necessity of his creditors to resort to the courts for relief.

I can hardly consider it necessary to say that I do not decide this case upon any grounds of fraud, and that the elevated and enviable character of Mr. Miller, one of the defendants, is an ample shield against such an imputation, and that I, with great pleasure, unite with all the solicitors in the case, in bearing testimony to that high standing to which his great merits and reputation so eminently entitle him wherever he is known.

From the views expressed, I feel myself compelled to overrule the motion to dissolve the injunction, and will pass all necessary orders to secure to the complainant the rights given to him."

On the 6th of August following, the court, in accordance with the views above expressed, passed a decree continuing the injunction until final hearing, and directing the receiver to proceed to sell the property. From this decree the defendants appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

J. H. Gordon and Samuel M. Semmes for the appellants, contended:

1st. The receiver should not have been appointed without

notice to the defendants and all parties interested. 2 *Conn.*, 400. 2 *Paige*, 243, 450. 3 *Daniel's Ch. Pr.*, 1775. *Edwards on Receivers*, 64, 65. The only cases excepted, are where the defendant is out of the jurisdiction of the court and cannot be found, and such facts must be stated in the bill.

2nd. The mortgagee was in possession under a legal title, and there being no charge of insolvency or improper conduct against him, or anything to show that the property was in danger in his hands, the court erred in continuing the receiver and injunction. *Daniel's Ch. Pr.*, 1449, *note 2. Ib.*, 1850, 1851, 1852, 1853. 2 *Story's Eq.*, secs. 826, 836, 837. 1 *Bland*, 213, 422. 2 *Bland*, 31. 3 *Bland*, 215. 1 *Md. Ch. Decisions*, 70, 493. 2 *Md. Ch. Decisions*, 157. *Edwards on Receivers*, 19 to 26, 30, 44. 1 *Jacob and Walker*, 628, 629. 7 *Gill*, 320. 9 *Wendell*, 80, 258. *Coote on Mortgages*, 553, *(30 Law Lib.)* Where a party claims paramount to the litigant party, the order appointing a receiver will not interfere with his claim. The mortgagee is the owner of the property in law and has the right to take possession at any time. A receiver is only proper where the fund is in danger, and his appointment can never disturb a prior legal title. If the first mortgagee is in possession a receiver will not be appointed.

3rd. The person appointed was the solicitor of the complainant, and therefore not a proper person to act as receiver. *Edwards on Receivers*, 54, and authorities there cited. 1 *Bland*, 427.

4th. The remedy of the complainants was either to redeem or to look to the mortgagee for the surplus, if any remained after paying the mortgage debt, and the court might have decreed a sale of the property by the mortgagee for the purpose of paying the debts. *Harris vs. Alcock*, 10 *G. & J.*, 251. 4 *Johns. Ch. Rep.*, 691. 2 *Pet.*, 107, 111, 112. 11 *Paige*, 40, 41. 4 *Kent's Com.*, 162. 3 *Edwards' Ch. Rep.*, 107.

5th. The facts of the case do not justify the appointment of the receiver. The answer denies the possession of the mortgagor. There is no allegation of fraud against any of the parties. There is no allegation of insolvency against Miller,

and none directly against Furlong. There is but a mere vague allegation that Furlong is improperly using the property, and that he is actually insolvent. The fact that Furlong, as the agent of Miller, advertised the property in his own name is not material, and could not overthrow the answer of the defendant.

The act of 1835, ch. 346, authorises the appeal in this case

*J. Philip Roman* for the appellee,

1st. The bill alleges, that Furlong had but an equitable interest in the goods mortgaged, and as the same could not be sold at law under his executions, the complainant's only remedy was in a court of equity. *Harris vs. Alcock*, 10 G. & J., 251. Where a judgment creditor acquires a lien upon the equitable estate of his debtor, by issuing an execution and having the same returned *nulla bona*, thus showing that he has exhausted his remedies at law, a court of equity will come to his aid, he may file his bill and have the property sold. 10 *G. & J.*, 251. 20 *Johns. Rep.*, 554, 566. 1 *Paige*, 598. 10 *Paige*, 418. 1 *Hill's Ch. Rep.*, 335. 7 *Alabama Rep.*, 217, 318, 926. 4 *Johns. Ch. Rep.*, 687. 2 *Pet.*, 107. 8 *Paige*, 567. The mortgage conveyed all the grantor's property of every description, and the bill alleges there was no other property out of which the judgments could be made. It also sufficiently alleges the insolvency of Furlong.

2nd. The principle that a receiver cannot be appointed against a mortgagee in possession, does not apply in this State, for it would be in the face of the case of *Harris vs. Alcock*, 10 *G. & J.*, 251. Receivers are nothing more than trustees, and they act upon the same principles, and may be directed to sell the property. The courts of this State have never decided that a receiver will not be appointed against the legal title. It is true they will interfere with great caution. 9 *Gill*, 472, *Speights vs. Peters*.

3rd. But suppose the principle that a receiver will not be appointed against a mortgagee, applicable. We insist that Miller, the mortgagee in this case, had not such a possession

of the property as would preclude the appointment of a receiver. The mortgage, the bill and the answers, all show this. The goods were in the store of Furlong, and he was selling and disposing of them as his own in that store. They were never removed or transferred, and there was no such delivery of them as would vest the possession in the grantee. The act of 1729, ch. 8, was intended to remedy particular cases, but does not apply here,—the mere fact of the execution and recording of the mortgage, would not vest in the mortgagee such possession as would preclude the appointment of a receiver. The delivery was not sufficient. *Story on Sales*, 277. Furlong says he was in possession as agent of Miller—now could there be such an agreement between the parties without a transfer? This possession was in direct violation of the terms of the mortgage. The conduct of Miller was sufficient to warrant the appointment of a receiver. He appointed the grantor of the deed, who had a reversionary interest under the deed, the agent to sell. This circumstance was sufficient to justify the interference of equity. Again, the allegation of the insolvency of Furlong is not explicitly denied by the answers. This was another circumstance warranting the interposition of equity. A receiver will be appointed over an executor where he is insolvent. 4 *Price*, 346. *Edwards on Receivers*, 36, 41. *Lewin on Trusts*, 320, *(24 Law Lib.*, 162.) The mortgagee had no right to appoint any person as agent to sell the mortgaged property. Again, the mortgagee paid over some of the proceeds of these goods to the grantor himself. Is not this a proper case for a receiver?

4th. No exception was taken in the court below to the person who was recommended and appointed receiver, hence none can be taken in this court. 1825, *ch.* 117, *sec.* 3. The act of 1832, ch. 303, requires the courts to write out their opinion in every case, in order to show what points were decided by the court below. The only question urged below was, whether a sufficient ground for a receiver was made out on bill and answer. But again the English doctrine, that a

solicitor could not be appointed receiver, is not the law of this State, and never has been recognised in practice. 1 *Bland*, 427. In the case of *Ellicott vs. U. S. Ins. Co.*, 7 *Gill*, 307, one of the solicitors was receiver.

5th. The court have the power to appoint a receiver without notice, provided the facts show a case for a receiver. 1 *Bland*, 419, *Williamson vs. Wilson.*

The act of 1830, ch. 185, sec. 1, would not have allowed an appeal in such a case as this. But this act was repealed by the act of 1841, ch. 111, except that part relating to receivers. 3 *Gill*, 152.

MASON, J., delivered the following opinion, being, in part, the opinion of the court.

The bill in this cause, which was filed on the 26th day of June 1852, charges the recovery, by the appellee Edwards, of certain judgments against Furlong one of the appellants, before a justice of the peace, the issuing of writs of *fieri facias* on said judgments, and the levying on certain goods and chattels alleged to be in the possession of Furlong, which had been conveyed by said Furlong to John Miller another of the appellants. The bill then charges the execution of the deed by said Furlong, conveying all his property, (which is the same levied upon by said writs) to said Miller, to secure a sum of money due him, and to secure the payment of certain other debts owing by the said Furlong to various persons, for the payment of which said Miller had become security. To said deed there was a condition annexed, that if Furlong paid to Miller and the other creditors the amounts severally due them, at or before certain stated periods, then the deed was to be void. The bill further alleges that the property conveyed by said deed or mortgage, was more than sufficient to pay the mortgage debts, but not more than sufficient to pay them, together with the claim of the complainant.

The bill then proceeds to charge, that the complainant was in danger of losing his claim by a misapplication of the said property, that Furlong was in possession of the same, and

rapidly disposing of it at public auction, that complainant was ignorant of the application which Furlong was making of the proceeds of sales, but that he believed they were improperly applied to his own use, that Furlong was insolvent, and that said property could not be sold under the aforesaid executions, and therefore the remedy of the complainant was in a court of chancery.

Upon this bill, and before answer, the court appointed a receiver and granted an injunction in accordance with the prayer of the bill.

Subsequently the appellants, Miller and Furlong, answered the complainant's bill. They admit the execution of the deed, the issuing and levying of the writs of *fieri facias,* and that the deed embraced all Furlong's property, and that it was more than sufficient to pay the mortgaged or preferred debts, and the claim of the complainant.

The defendants, however, explicitly deny that Furlong is in possession of the property, or that he is selling or disposing of the same as his own property, or for his own purposes, but that he was acting as the authorised agent of Miller, and as such was selling the property, collecting the moneys on the notes and other assets conveyed by said deed, and was applying the proceeds arising from said sales and collections, in discharge of the objects contemplated by the said deed or mortgage ; and they further deny that any part of the money has been improperly applied.

Upon application for that purpose, after the defendants had filed their answers and without proof on either side, the court below refused to dissolve the injunction previously granted, or to discharge the receiver. This refusal forms the basis of the present appeal, and we are called upon to decide whether the proceedings of the circuit court, either in passing the first order appointing a receiver and granting an injunction, or afterwards, in refusing to revoke the same, were regular and proper.

We will not now pause to consider whether the averments of this bill were sufficient to warrant, in the first instance, the

appointment of a receiver, and the granting of an injunction. We will barely remark upon this point, that this power is a most delicate one, and should be exercised by the court with extreme caution, and only under special and peculiar circumstances requiring summary relief.

Conceding that the averments of the bill were sufficient to warrant the interposition of the court and the passing of the first order, it is clear to our minds that the defendants have explicitly denied every material fact stated in the bill, and completely sworn away every equity upon which the complainant could rest his case. The only allegations in the bill that could have authorised the interference of a court of chancery in the mode prayed for, were those which averred *that the defendant Furlong was in possession of the property, was selling and converting the same to his own use, that he was insolvent, and that the complainant was thereby in danger of losing his debt.* These charges are unequivocally and explicitly denied, and thus the complainant has every pretended ground taken from him, upon which to rest an application for an injunction and receiver.

Upon other grounds we do not think the present case is one which calls for the interposition of a court of chancery, to protect by injunction and the appointment of a receiver, the interests of the complainant. The appellant Miller is the legal owner. The court always reluctantly interferes against the legal title, and only in cases of fraud clearly proved, and of imminent danger. *Lloyd vs. Passingham,* 16 *Ves.,* 59. *Williamson vs. Wilson,* 1 *Bland,* 422. *Speights vs. Peters,* 9 *Gill,* 472. So far from fraud or improper conduct, constituting the ground of this proceeding against the legal owner, the judge who passed the order, expressly excludes any such idea, and even passes a high encomium upon what he terms the *elevated and enviable character of Mr. Miller,* thereby taking from the court all ground or claim to deal with his property in the harsh mode which was adopted.

This court does not wish to be understood as calling in question the authority of the case of *Harris vs. Alcock,* 10

Furlong and Miller, vs. Edwards.

*Gill and Johns.*, 226.   We can see nothing in that case to warrant the present proceeding.   The only purpose for which that case could be invoked, would be to authorise the court to enforce the equitable lien of the complainant, acquired against the mortgaged property by virtue of his levy.   The position assumed by the learned judge who delivered the opinion below, as respects *the time* when the creditor acquires his lien, is in our judgment erroneous.   The following is his language upon this point :

"The right to file his bill takes place, so soon as the officer having charge of the execution makes his return.   Nothing in the nature of a lien or preference is acquired until the bill is filed.   From that period he has priority over all other creditors at large."   The case of *McDermutt vs. Strong*, 4 *Johns. Ch. Rep.*, 687, is cited to support this proposition.   We will not discuss the effect of that decision, or whether it sustains the view taken by the court below.   The case of *Harris vs. Alcock*, in our own court expressly decides, that the issuing and levying of a *fieri facias*, secures for the creditor a priority or lien upon the debtor's equitable interest in personal property covered by a mortgage, *which lien dates from the time the execution was placed in the officer's hands.*   Thus the foundation for the interposition of a court of equity to enforce the lien, has been laid, which may or may not be resorted to, as the circumstances of the case may afterwards require.   If the mortgagee proceeds to dispose of, and settle the estate as his duty requires him, by first paying off the incumbrance, and then the creditor's execution, there would be no need of incurring the expense and delay of a chancery proceeding, but if on the contrary he does not, a court of chancery upon a proper application, would require him to do so.   In the present case the answer of the defendant shows that he, as mortgagee, is pursuing strictly the course which the law marks out.   He alleges in his answer that *he is selling the property, collecting the moneys on the notes, and applying the proceeds to the payment of the mortgage debt.*   Why then ask a court of equity to require a party to do that which he does not de-

v.3

ny he is bound to do, and which in fact he is doing as regularly and as expeditiously as he is able? This court will never encourage unnecessary litigation, nor will it treat an individual as in default of any legal duty, unless upon a case clearly made out showing such default.

Whether this be a proceeding under the authority of the case of *Harris vs. Alcock*, or not, is not a question directly presented by the present appeal, and if it were, it would be comparatively an unimportant one, when contrasted with the real question involved in this controversy, which is the propriety of granting the injunction and the appointment of a receiver. The point of the decision of the court below directly under review and from which this appeal was taken, was the refusal to dismiss the receiver and dissolve the injunction.

The judge who delivers this opinion takes another view of this case, which in his judgment embraces and disposes of every question which arises out of it, as well as all other cases similarly situated. The sole object of the appointment of a receiver, is to take care of the subject or property about which the parties are contending, and to prevent it from being wasted or lost. 1 *Bland*, 213. If the court can see that the party asking for relief, can have redress and protection in any other way, the extraordinary power of the court will not be exercised in the appointment of a receiver. In the present case I think that not only the complainant, but all other parties interested in the estate of Furlong could find ample protection under the act of 1845, ch. 166. I am of the opinion that the present case is embraced within the manifest spirit of that act, and that the defendant Miller should be required to give bond for the faithful disposition of the property entrusted to him. It is true that under that act *trustees, eo nomine,* are required to give bond, but I cannot imagine a reason why, in construing this statute, its application should be restricted to those only who are *styled,* in the conveyance, *trustees,* and not extended to those who are equally so though under a different name.

The inquiry then to which we are to address ourselves is,

Furlong and Miller, *vs.* Edwards.

does Miller stand in this court in the character of a trustee, acting for the benefit of others or not? The conveyance under which he claims the property in controversy, first provides for his own protection as a creditor directly of the mortgagor; secondly, as surety or endorser to other creditors of Furlong, and therefore is to that extent a deed for the benefit of those creditors; and thirdly, it provides for a restoration of the property to the grantor after those debts are paid, or by legal implication, a disposal of it with a due regard to the equitable rights of others, (like those of the complainant for example,) which may have been subsequently acquired. Under this deed the grantee took possession of the property, or which is enough for the purposes of this case, as I regard it, he claims in his answer to have done so. These several facts and provisions, I think, constitute the present conveyance a deed of trust, and Miller the grantee, a trustee, within the meaning of the act of Assembly.

In *Willis on Trustees, page* 38, it is stated, that "trustees whether for public or private purposes, become so either expressly, or by that implication which arises when it would be inequitable to sustain any other character." And in 4 *Kent* 305, the same principle is recognised in these words : "No particular form of words is necessary to create a trust if the intention be clear." In the same volume of *Kent, page* 321, the principle is still further extended and made I think, in terms, to embrace the present case. "Collateral securities given by a debtor to his surety, are considered as trusts for the better security of the creditor's debt, and chancery will see that their intention be fulfilled." Another description of a trust estate is given in *Willis* 34. "In the creation of a trust, it is not only necessary that there should be a person seized to the use of, or in trust for some other person, but that there should also be some one capable of enjoying the use or trust itself; that is, there must be a *cestui que trust,* as well as a trustee."

The present deed comes under the operation of all these principles. In the first place, it is clear that the incidents and

peculiarities of a trust estate, arise out of this deed, however inappropriate the language employed may have been to effectuate such a purpose.  The relation of *cestui que trust and trustee,* exists as manifestly as if express words had been used to create it,  Miller is the trustee, because he holds property for the benefit of others, while the grantor himself and his other creditors are the *cestui que trusts,* for whose use and benefit the property is held.  The illustration given in Kent is this case,  The present deed is a "collateral security given by a  debtor to his surety," and as such creates a  trust for  the benefit of the creditors,  The mortgagee is the trustee for the creditors whose claims are provided for in the deed.  Those creditors  clearly are, therefore, directly and materially interested in the administration of  the estate,

It must be  conceded that a trust need not depend on mere form  for its creation.  If this be true the omission  of  formal technical language  cannot  defeat the trusts  designed  to  be raised  in  the present deed.  To illustrate further  this  view, let us suppose that the present deed contained, after the name of  the grantee, the word *trustee,* and in the *habendum  clause,* and  before  the  purposes of the deed are defined,  the  usual words, *in  trust  nevertheless for  the  following  purposes;* in such a case could any rational mind doubt that the act of Assembly would apply to the deed?  Yet the addition  of these words  would not vary in  the slightest degree the  substance, purpose or effect, of the instrument.  In other words, this language is merely matter of  form, and could not change materially the nature of this transaction.  Without this  language all  the  peculiarities  of a trust  exist as effectually, as  if express terms had been  employed for the purpose.

The present transaction clearly comes within the *reason and spirit,* and is therefore within the operation of the act of 1845, ch. 166.  That act was designed for the protection of creditors and others interested in  a debtor's estate, by preventing them from making conveyances of their property to irresponsible or corrupt agents of their own selection for the pretended benefit of creditors.  Of what avail would the wise provi-

sions of this law be, if they are thus easily to be defeated by a resort to an indirect mode of accomplishing the end which the law designed to prevent? The identical case contemplated by the statute, namely, *a conveyance by a debtor of his property for the benefit of creditors, and for other purposes, to a third party,* is before us, and because the person thus selected to carry into effect those designs is not *styled a trustee,* though in fact he is one to all intents and purposes, we are therefore to say the deed is not within the meaning of the law.

In construing acts of Assembly, the intention of the lawmakers should be, if possible, ascertained and carried out, and to ascertain such a purpose the most liberal rules of interpretation should be resorted to, especially where the purpose of the law is the suppression of a mischief. To accomplish this great and leading object, (the fulfilment of the design of the legislature,) an instrument, technically a mortgage, will be treated as a deed of trust, and *vice versa.*

In the views herein expressed, I am strengthend by the supplement to this act, of 1846, ch. 153. There, certain cases are enumerated as exceptions to the rule laid down in the previous act, and as this case does not come within the exceptions, there is thereby superadded another reason for supposing that it was designed to be embraced within the previous law. By the act of 1846, the power given to regulate the bond removes all objections to the law on the ground of hardship on that score. The penalty of the bond is now left within the discretion of the court by the latter act. The wisdom of this law, as I understand it, could not be better illustrated than by the present case. How much more summarily and effectually would the ends of justice be accomplished and the interests of the parties be advanced by a proceeding requiring Miller as trustee, under the act of 1845, to give bond, instead of resorting to the harsh, vexatious and protracted proceeding incident upon the appointment of a receiver? The bond, in all such cases, is, at last, the best and only safeguard that can be suggested for the protection of parties in-

terested in the administration of an estate. In the present case, if Miller gives a good bond for the faithful performance of his trust, what additional advantage could the complainant derive from a proceeding in chancery, whether it be for the purpose of having a receiver or trustee appointed, or whether it be to enforce his lien in pursuance of the principles of *Harris vs. Alcock?* I think, none. The bond is to stand good for any neglect or default in duty on the part of the trustee, and, therefore, I cannot conjecture, in the present aspect of the case, what good could result from the further prosecution of this proceeding that would not be worked out by an adherence to the provisions of the act of Assembly.

Nor is there any just grounds for a party to complain of the requirements of this act.

All trustees appointed by authority of law must give bond, and why should a trustee, voluntarily appointed, be exempted? If he is an honest man, and experienced in business, he could probably easily give the required security; if, on the contrary, he is an unworthy and an inexperienced person, and not able to give the bond, he is not fit to execute the trust.

It is by no means my design to extend the operation of the act of 1845, ch. 166, to all cases of simple mortgages, where only the grantor and grantee are interested in, or are parties to the deed. All such cases must depend upon their own peculiar circumstances. Nor do I wish to intimate that another bill or petition in chancery may not be necessary hereafter to protect and effectuate the rights of the present complainant. But I think that that time has not yet arrived, and therefore regard this whole proceeding, for whatever purpose instituted, as premature and irregular.

> *Decree reversed, and cause remanded*
> *with costs in both courts.*

Le Grand, Chief Justice, and Eccleston, Justice, concur in the foregoing opinion of Mason, Justice, except so far as the same relates to the act of 1845, ch. 166. Upon that point they think no opinion is necessary, and therefore they wish to be understood as expressing none.