# Scott *versus* Porter Brothers.

A factor who retains money of his principal is not a fiduciary debtor, within the meaning of the Bankrupt Act, and such a debt is discharged under the act.

January 29th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 4, of *Philadelphia county* : Of July Term 1879, No. 14.

Case by Porter Bros. against William Scott, to recover a sum of money alleged to have been received by the said Scott, for goods sent by the plaintiffs to defendant to be sold on commission.

The *narr.*, inter alia, alleged : "And the plaintiffs demanded of the said defendant, the balance of said proceeds, to wit: the sum of $820.77 ; but the said defendant not regarding his duty as commission agent and consignee aforesaid, but contriving and fraudulently intending, craftily and subtly to deceive, defraud and injure, the said plaintiffs in this behalf, did not and would not pay over to the said plaintiffs the said sum of $820.77, or any part thereof, but refused so to do, and converted the same to his own use, to the damage of the said plaintiffs $5000, and therefore they bring this suit."

[Scott v. Porter Bros.]

The defendant, among other pleas, pleaded specially his discharge under the Bankrupt Act, to which plea the plaintiffs demurred. The court entered judgment on the demurrer for the plaintiffs, when defendant took this writ and assigned this action of the court for error.

*Harry J. Scott* and *William Henry Peace*, for plaintiffs in error.—A factor is not a fiduciary debtor within the meaning of the Bankrupt Act: Chapman *v.* Forsyth, 2 How. 202; Hayman *v.* Pond, 7 Metc. 328. It is true these decisions were under the Act of 1841, but it is contended that the words of the Act of 1867 are still broader.

The Act of 1841 undoubtedly referred to technical trusts, and the Supreme Court of the United States having defined what a fiduciary character is, Congress in passing the Bankrupt Act of 1867, had the benefit of that judicial interpretation and construction.

Phrases in a statute which have received a judicial construction before its enactment, are to be understood according to that construction, unless the statute clearly requires a different one: McKee *v.* McKee, 17 Md. 352; Stockett *v.* Boid's Adm'r, 18 Id. 484; Commonwealth *v.* Hartnett, 3 Gray 450.

And this principle of interpretation was, in the case of Cronan *v.* Cotting, 104 Mass. 245, applied to this term "fiduciary."

*L. C. Cleemann,* for defendant in error.—It would seem that where a commission merchant received the proceeds of goods sold, and when they were demanded of him by the consignor refused to pay them over, and fraudulently converted them to his own use, this would be such a fraud and embezzlement under the act as would prevent the discharge of the claim by bankruptcy. Or if not a debt created by fraud and embezzlement, certainly it is a debt created by the bankrupt while acting in a "fiduciary character" within the act, which describes debts contracted by the bankrupt while acting in *any* fiduciary capacity: In re James W. Seymour, 1 Benedict 352; In re John H. Kimball, 2 Id. 558; 6 Blatch. 292; Duguid *v.* Edwards, 50 Barb. 288.

It has been repeatedly held, that if the factor becomes bankrupt or insolvent, the principal's right to the proceeds of his property is paramount to that of the general assignee, or assignee in bankruptcy, and he may follow and recover them accordingly: Thompson *v.* Perkins, 3 Mason 233; Taylor *v.* Plumer, 3 M. & Selw. 562.

Mr. Justice TRUNKEY delivered the opinion of the court, February 16th 1880.

The first section of the Bankrupt Law of 1841 provided that,

all persons "owing debts which shall not have been created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity," should be discharged on a compliance with the requisites of the statute.    Upon the point, whether a factor, who retains the money of his principal, is a fiduciary debtor within that act, it was thus interpreted : " If the act embrace such a debt, it will be difficult to limit its application.    It must include all debts arising from agencies ; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left few debts on which the law could operate.    In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust.    But this is not the relation spoken of in the first section of the act.    The cases enumerated, 'the defalcation of a public officer,' 'executor,' 'administrator,' 'guardian or trustee,' are not cases of implied but special trusts, and the 'other fiduciary capacity' mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract.    A factor is not, therefore, within the act :" Chapman *v.* Forsyth, 2 How. 202.

The provision of the Bankrupt Act of 1867 is, that "no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged under this act."    If the word fiduciary in this act be not construed as it was in the former, it will be as difficult to limit its application as it would have been under the Act of 1841, had it not then been confined to technical trusts.    Words and phrases, the meaning of which in a statute has been ascertained, are, when used in a subsequent statute, to be understood in the same sense: Potter's Dwar. Stat. 274, and cases cited in note ; McKee *v.* McKee, 17 Md. 352 ; Cronan *v.* Cotting, 104 Mass. 245.    The well-considered opinion in Cronan *v.* Cotting is persuasive, if not conclusive, that the word is used in the same sense in the Act of 1867, as in the prior statute. Referring to the reasoning of Judges Blatchford and Nelson of the United States District and Circuit Courts in New York, who decided that the word was used in a different and more extensive sense in the later act, it is said, " On the contrary, it appears to us that the inference is quite as legitimate that Congress omitted the enumeration of specific trusts for the very reason that the term 'fiduciary capacity' had, by judicial construction, received a fixed definition ; and with intent that the phrase should carry that definition into the new act.    The specific enumeration was omitted because all were included in the general expression, 'fiduciary.' The association of those specific trusts originally was held to be

[Scott *v.* Porter Bros.]

an indication of intent in the general purpose. That intent, having been ascertained, has been affixed to the general term, and become legal construction."

In Neal *v.* Clark, 5 Otto 704, the court say, quoting Chapman *v.* Forsythe, *supra*, a like process of reasoning may be properly employed in construing the corresponding section of the Act of 1867; and conclude "that the 'fraud' referred to in that section means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." This accords with the view before taken in Cronan *v.* Cotting, namely, that if the phrase, "while acting in any fiduciary character" be referred to that which immediately precedes, it implies something in the nature of defalcation; and if to the first branch of the section, its association with fraud and embezzlement—fraud involving moral turpitude or intentional wrong, as does embezzlement—carries the implication of a debt arising from breach of a technical trust, and not one which the law implies from the contract. What was said in reference to the interpretation of the word "fraud" may be said of the interpretation of the phrase, "while acting in any fiduciary character," by the Supreme Court of Massachusetts, to wit: "Such a construction of the statute is consonant with equity, and consistent with the object and intention of Congress in enacting a general law by which the honest citizen may be relieved from the burden of hopeless insolvency. A different construction would be inconsistent with the liberal spirit which pervades the entire bankrupt system."

We repeat the remark in Curtis & Co. *v.* Waring Brothers & Co., 11 Norris 104, that for reasons given by Wells, J., in Cronan *v.* Cotting, we conclude, that sect. 5717 Rev. Stat., U. S., was intended to have the same meaning which the Supreme Court of the United States had put upon the similar clause in the Bankrupt Act of 1841.

The declaration sets forth a consignment of goods for sale on commission, that the defendant sold the goods, and after deducting his commissions and other reasonable charges, and a payment to the plaintiffs of $966.20, there remained in his hands a balance of $820.77. And the plaintiffs afterwards demanded the said balance, but the defendant "contriving and fraudulently intending, craftily and subtly to deceive, defraud and injure the said plaintiffs in this behalf," refused to pay the same, but converted it to his own use. The form of the charge of fraud is similar as commonly used in a declaration in assumpsit, relates to refusal to pay on demand, and cannot be considered as an averment of fraud in fact, unless a refusal by a factor to pay a balance due on his account be deemed, of itself, positive fraud. It is unnecessary to

[*Scott v. Porter Brothers.*]

determine the effect of a statute of a state declaring certain acts a crime upon a bankrupt's discharge; for, to warrant a conviction of a consignee or factor, under sect. 125 of the Crimes Act of 1860, it must be averred and proved that he disposed of the merchandise "to his own use, in violation of good faith, with intent to defraud the owner of such merchandise;" or, with like fraudulent intent, he applied to his own use the proceeds of such merchandise. An averment to this effect in the declaration, would be of positive fraud, and within the Bankrupt Act. The special cause of demurrer to the plea of discharge as a bankrupt, is, "that the claim against the defendant of the plaintiffs as in said declaration, set forth, is by law excepted from the operation of a discharge in bankruptcy, having been created by the bankrupt, while acting in a fiduciary character." The only question is, whether a factor is one acting in a fiduciary character in the intendment of the Bankrupt Law? We think it was error to so hold.

Judgment reversed, and now judgment for the defendant below on demurrer.