## Spingarn v. Fidelity-Philadelphia Trust Company et al.

*Benjamin H. Hellman,* for plaintiff.

*Howard H. Rapp,* for defendant Fidelity-Philadelphia Trust Company.

*Henry Arronson,* for intervening defendant Swartz.

SLOANE, J., May 5, 1943.—

### I. *Statement of the pleadings*

(*a*) Plaintiff's bill asks for specific performance of a written agreement to sell real estate which he avers he entered into with defendant and defendant "repudiated" prior to the date fixed for settlement on the reason that it had received a higher offer from another party.

(*b*) Defendant's answer avers that it owned the property in a fiduciary capacity. Defendant denies that it "repudiated" the agreement, averring that it terminated it upon receipt from another party (the intervening defendant) of a bona fide offer and agreement to purchase at a higher price, and that termination of plaintiff's agreement was made upon its status as "fiduciary" and pursuant to the express provision

of the agreement with plaintiff allowing such termination upon receipt of a higher offer. Defendant asks dismissal of the bill.

(*c*) The intervening defendant filed an answer substantially the same as that of the original defendant.

Plaintiff filed preliminary objections and a reply to defendant's answer, but agreed to join issue on the latter's averments and go to hearing on the matter and its merits.

At the hearing before me, the facts were developed by admissions from the pleadings and agreement, and I adopt them and make the following

## II. *Findings of fact*

1. (*a*) On March 4, 1943, plaintiff as vendee agreed in writing with defendant to purchase premises known as 938 Arch Street and 43, 45, 47, and 49 North Tenth Street, Philadelphia, for a price of $42,500, payable $1,000 at the time of the agreement, $6,500 at time of settlement, and a bond and warrant secured by a purchase-money mortgage in the sum of $35,000. The $1,000 deposit was paid.

(*b*) Defendant entered into and was a party to the agreement as "Trustee as set forth in indenture of mortgage, dated December 22, 1928, and recorded in the office for the Recording of Deeds in Mortgage Book J. M. H. No. 6419, p. 471, etc. . . ."

2. The mortgage referred to in the agreement was given to defendant as mortgagee-trustee, in trust nevertheless "for the pro rata security of the several persons, estates, associations or corporations whose funds may at any time be invested in fractional parts of said bond and mortgage, . . . and to whom the trustee may issue fractional certificates of interest therein."

The mortgage also authorized defendant to buy in the mortgaged premises in event of foreclosure, "and thereafter the trustee shall have the right in its discretion to lease and collect and apportion rents, and to sell

and convey the same free of all trusts . . . and apportion and pay over said net proceeds of sale equitably pro rata to and among the registered owners of all said outstanding fractional certificates."

3. Defendant foreclosed the mortgage in 1935, purchased the property at sheriff's sale, and received a sheriff's deed to "Fidelity-Philadelphia Trust Company, Trustee as set forth in Indenture of Mortgage dated December 22, 1928 . . ."

4. Following the purchase at sheriff's sale, defendant held and managed the premises as trustee for the benefit of holders of fractional certificates, as described in the mortgage.

5. Among the holders of fractional beneficial certificates in said real estate are estates of persons who are not sui juris, estates of decedents, and various trust estates, for all of whom defendant is acting as trustee. Defendant is also acting as agent for other holders of fractional certificates. Defendant in its corporate capacity is the holder of a fractional certificate in the amount of $600, out of a total certificate issue of $47,750.

6. The agreement between plaintiff and defendant provided in paragraph 16 thereof:

"If the vendor [defendant] is acting in a fiduciary capacity, and if a higher price shall be offered for the property, upon terms satisfactory to the vendor, before completion of settlement hereunder, the vendor may terminate this agreement and return the deposit money, which shall be accepted by the vendee in lieu of all claims for damages and specific performance."

7. Plaintiff knew, at the time he entered into the agreement of March 4, 1943, that defendant was acting as trustee for various participating interests in the said real estate.

8. (a) On March 10, 1943, and before settlement and conveyance to plaintiff, defendant as vendor entered into a written agreement with intervening de-

fendant to sell the same premises to her for the sum of $45,000, payable $4,500 at time of the agreement, $4,500 additional at time of settlement, and the balance to be secured by a purchase-money mortgage accompanied by a bond and warrant in the amount of $36,000, the principal of which is to be amortized at the rate of $900 each six months. The intervening defendant paid the down money required by her agreement.

(b) The price for the property agreed to be paid by the intervening defendant is a higher and better price than the one agreed to be paid by plaintiff.

9. On March 10, 1943, defendant advised plaintiff by letter that it had received an offer for the purchase of the property at a higher price "upon terms satisfactory to us, which offer as fiduciary we are bound to accept". The letter stated that in accordance with the terms of the quoted paragraph 16 of their agreement it terminated the agreement, and returned plaintiff's deposit money of $1,000 to him.

10. Plaintiff is ready, able, and willing to complete the purchase of the property in accord to the terms of his agreement.

11. Intervening defendant is ready, able, and willing to complete the purchase of the property in accord with the terms of her agreement.

### III. *Discussion*

Plaintiff wants and seeks specific performance of his agreement to purchase certain premises. Defendant admits the execution of the agreement, but in view of an admittedly higher offer defendant opposes the prayer on two grounds:

(a) That as fiduciary it had the obligation to accept the higher offer under the rule of Orr's Estate, 283 Pa. 476 (1925), and the cases that follow;

(b) That, as fiduciary, it had the right (under paragraph 16) to terminate its agreement with plaintiff

and be quit of it by returning to plaintiff his deposit money.

Plaintiff's position is that "fiduciary" as used in the contract is a "word of art", relating only to such fiduciary as is embraced by the rule in Orr's Estate; and that defendant's position and duties as trustee for participating interest holders were different and distinct from those as trustee, guardian, or agent of the individuals or estates owning the participating interests, and it was not the fiduciary that is accorded the right of Orr's Estate to rescind one agreement for a better one.

I do not dispose of the interesting question of the applicability of the rule of Orr's Estate to the present situation—that of a contract to sell entered into by a corporate trustee for interest holders in real estate acquired by foreclosure, who are themselves estates, testamentary trustees, executors and administrators, agents and guardians. The rule exists certainly as to those trustees and wards who have the significance of paternity of our orphans' court.[1] I myself have refused to extend the rule to building and loan associations in voluntary liquidation: Jinks v. George S. Hensel B. & L. Assn. et al., 47 D. & C. 145. But as this matter

---

[1] The cases applying the rule involve fiduciaries under the orphans' court's jurisdiction. See Kargiatly v. Provident Trust Company of Philadelphia et al., 338 Pa. 358 (1940), Clark et al. v. Provident Trust Company of Philadelphia, Trustee, et al., 329 Pa. 421, 426 (1938) ("executor, trustee or other fiduciary with reference to property owned by an estate"), and cases cited therein. Though the lower court in Good v. Capital Bank & Trust Co. et al., 47 Dauph. 414, 418 (1939), applied the rule to a trustee for mortgage bondholders, so as to permit acceptance of a higher offer, the Supreme Court, on appeal (337 Pa. 353, 354 (1940)) upheld the termination of the first contract on "another reason than the one assigned" below, and accordingly the case cannot be considered as judicially extending Orr's Estate to such trustee.

The rule has been criticized as being in derogation of the rights of the first purchaser, of the settled rule against interference with the exercise of a discretionary power in the absence of bad faith, abuse, or great improvidence (see Long et al. v. Stout, 305 Pa. 310 (1931), and Endsley v. Hagey et al., 301 Pa. 158 (1930). Cf. Fassitt v. Seip, 240 Pa. 406 (1913)), and of the rights conferred

stands, I need not untie my thinking to resolve the question to a conclusion.

I think, and my judgment is, that the parties themselves have agreed upon the conclusion, and it is only for me as the concluding force to give finite expression to it. The parties did agree that if defendant was acting in a fiduciary capacity it could give up plaintiff's offer for a better one.

The word "fiduciary" used in the agreement between plaintiff and defendant is generic; it includes all types of persons in relationships involving trust or confidence (see 36 C. J. S. 740). In using it in different legal situations, varying degrees of inclusion have been accorded it by the courts,[2] the legislature,[3] and the A. L. I. Restatement of the Law.[4]

---

upon the fiduciary by the will or other authorization to act. See Fiduciary Review, June 1938, May 1940. Cf. Bolen v. Spahr, C. P. No. 1, December term, 1941, no. 3562.

The rule perhaps should not be applied to trustees outside the orphans' court's jurisdiction, into which class a trustee under a participation mortgage or real estate trust properly falls. See Reading National Bank & Trust Company's Account, 22 D. & C. 654 (1935), and Sullivan's Petition, 34 D. & C. 154 (1938). See also Smith's Petition, 43 D. & C. 154, 157, 159 (1942) (listing types of trusts beyond the jurisdiction of the orphans' court). See amendment to the Orphans' Court Act of June 7, 1917, P. L. 363, sec 9 (p), by the Act of July 2, 1941, P. L. 227, sec. 1; 20 PS §2254, providing for division of brokers' commissions among the procuring brokers of the two agreements where a fiduciary subject to the orphans' court's supervision rescinds a contract upon receipt of a higher offer prior to settlement.

[2] Cf. Casari et al. v. Victoria Amusement Enterprises, Inc., et al., 327 Pa. 382, 389 (1937), and Scott v. Porter Brothers, 93 Pa. 38 (1880).

[3] See Fiduciaries Act of June 7, 1917, P. L. 447, as amended, 20 PS §321; Liability on Written Instruments Act of June 24, 1939, P. L. 871, sec. 2, 20 PS §1172; Fiduciaries in Military Service Act of March 20, 1942, P. L. 13, sec. 1, 20 PS §1176.1; Uniform Fiduciaries Act of May 31, 1923, P. L. 468, sec. 1, 20 PS §3311.

[4] See A. L. I. Restatement of Contracts, §498, Restatement of Restitution §166, comment d, Restatement of Agency §13; cf. Restatement of Trusts §2.

The parties must be assumed to have chosen the word carefully (see Moore et ux. v. Stevens Coal Co., 315 Pa. 564, 568 (1934)), particularly since counsel negotiated and was present at the execution of the agreement, and the use of a broad inclusive term without qualification justifies the conclusion that a broad inclusive meaning was intended. Plaintiff has presented no evidence of a custom or usage restricting the meaning of the word in connection with sales of real estate to include only those trustees within the rule of Orr's Estate (cf. Electric Reduction Co. v. Colonial Steel Co., 276 Pa. 181 (1923)). Nor is he aided by the principle that technical words will not be given their technical meaning if manifestly contrary to the parties' intention (The Lehigh & Wilkes-Barre Coal Co. v. Wright et al., 177 Pa. 387 (1896)); an intention of the parties contrary to the broad legal meaning of the word "fiduciary" is not manifest by a look at the agreement. If the meaning that defendant should have expected the word to convey to plaintiff (see 3 Williston on Contracts (rev. ed., 1936) 1741, §607) is the narrower meaning urged by plaintiff, we must find it by examining all the circumstances of the agreement: Hempfield Township School Dist. v. Cavalier et al., 309 Pa. 460 (1932); 17 C. J. S. 718. Such examination does not lead to the narrow interpretation.

The circumstances are plain: plaintiff desired to purchase the property and made an offer to defendant who was acting as trustee for a number of participating interest holders. He knew that for it was right there in the agreement for knowledge and examination. The offer was satisfactory to the trustee and a written agreement was prepared by its real estate officers and attorneys, embodying a printed section used generally by it in real estate sales. The agreement had provisions designed to protect the defendant trust company against liability and to avoid suits

against it. Plaintiff knew, or should have known, that the language of such agreement was meant to give defendant, and not plaintiff, every advantage consistent with the bargaining position of the parties, with an intent to prevent subsequent events from operating to its injury or embarrassment. One of the types of possible injury was liability to suit or complaint by the interest holders whom it represented, either in its capacity of indenture-trustee, or investing-fiduciary, or both. One form of suit (aside from suit on the basis of Orr's Estate) might be by such persons on the ground that the presence of a higher offer very soon after the execution of the agreement showed gross carelessness in accepting the lower offer, making defendant liable for the difference between the two offers. While this would entail difficulties of proof on the part of the complaining parties (see Wood's Estate, 272 Pa. 8 (1922)), it would nevertheless involve a burden on defendant. Aside from such legal action, the practical business importance of precluding any complaint that a sale was ill-advisedly or carelessly made, a complaint likely to arise upon quick receipt of a higher offer, is a consideration which stands high in the contemplation of anyone in a representative capacity, and should be recognized by a contracting purchaser. Where a broad word is used which in its broad meaning eliminates the possibility of unfavorable suit or complaint, the promisee should reasonably expect that the broad meaning was intended. Plaintiff's case for a narrow interpretation is not supported by the circumstances of the agreement or by any rule of interpretation which can be properly applied here. While it was not contended or argued by plaintiff, I do not consider that the rule that ambiguous language must be construed against the party using it should be applied in this case.

" 'This rule . . . is the last one which the courts will apply, and then only if a satisfactory result can-

not be reached by the other rules of construction. [It] is never applied . . . where the intention is clearly expressed. . . . Further, the language must be given a meaning in accord with the object in view' ": Commonwealth ex rel. v. Nelson-Pedley Construction Co. et al., 303 Pa. 174, 180 (1931), quoting from 13 C. J. 545. Plaintiff must bow to his agreement.

I consider that the ownership by defendant in its corporate capacity of a $600 interest is "de minimis" in view of the total outstanding interests in the amount of $47,750, and does not change defendant's status from that of trustee to an individual contracting party. Nor do I agree with plaintiff that any significance is to be given to the fact that the indenture gave defendant full control over management and sale and the right to buy all the interests at par plus interest. Control over management and power to sell are usual incidents of fiduciary activity. And the property's value did not warrant a purchase at par (the offer of intervening defendant is less than par), and defendant did not exercise its right to purchase.

## IV. *Conclusions of law*

1. Plaintiff and defendant entered into a written agreement for the sale of real estate which provided, in paragraph 16 thereof, for termination by defendant, if it was acting in a fiduciary capacity, upon receipt of a higher offer of purchase which was satisfactory to it.

2. In entering into the agreement defendant did act as a fiduciary for participating interest holders in the real estate.

3. Under the terms of its agreement with plaintiff, defendant had the right as fiduciary to terminate that agreement upon receipt of a higher satisfactory offer from intervening defendant.

4. Plaintiff is not entitled to specific performance of his agreement with defendant.

### V. *Decree nisi*

And now, May 5, 1943, upon consideration of the foregoing case, it is ordered, adjudged, and decreed:

(*a*) That plaintiff's bill be dismissed, and

(*b*) That each party pay his, her, or its own costs.

The prothonotary will enter this decree nisi and give notice to the parties or their counsel of record of the entry of the decree, and, if no exceptions thereto are filed within 10 days thereafter, the decree nisi shall be entered as the final decree by the prothonotary as of course.