1825.

Selby
vs
Magruder

JUNE.

SELBY *vs.* MAGRUDER.

*U. B. obtains a judgment against M,* in 1817. In 1819, *B C* also obtains a judgment against *M,* and issues a *ft. fa.* returnable in 1820, and on the day of issuing it, places it in the hands of the sheriff. On the return day the sheriff returns the *ft. fa.* laid as per schedule annexed, for a certain amount—residue of defendant's property secreted. In 1820 *B W* also obtains a judgment against *M* upon which a *ca. sa.* is

APPEAL from *Montgomery* county court. It was an action of replevin, instituted by the appellee against the appellant, to recover a number of slaves. A case was stated for the opinion of the court below, upon which that court, (*Ridgely* and *Kilgour,* A. J.) decided in favour of the appellee. The facts of the case stated sufficiently appear in the opinion delivered by this court.

The cause was argued before BUCHANAN, Ch. J. EARLE, MARTIN, and STEPHEN, J.

*F. S. Key,* for the Appellant, contended, 1. That the

issued, and served on *M,* and he, on the 5th of August 1820, is discharged under the insolvent laws of the district of *Columbia,* and on that day executes a deed of trust of all his property, under the said laws, to *G B M.* In 1819, *U B* sues out a *sci fa* on his judgment, and on the 14th of November 1820, obtains a *fiat* and immediately issues a *ft fa* which is laid on the property returned *secreted,* as above stated, being the property now in dispute. Replevin for this property is then brought by *G B M,* the trustee of *M,* against the sheriff, and the property by consent of all parties was sold, and the proceeds of the sale were to depend on the question which of the parties was entitled to a priority. *Held,* that *B C,* was so entitled, that the property was bound by his judgment from the time of the delivery of his execution to the sheriff, and that that lien was not destroyed by the return of the sheriff of the execution, but continued to attach to the property after its transfer to *M's* trustee.

Bank of *Columbia*, by the delivery of their *fieri facias* to the sheriff in March 1820, acquired a lien on the negroes in question, which no act of the debtor could divest.

2. That *George Magruder*, by his conveyance to his trustee in August 1820, only gave him the negroes, as he himself, at the time of petitioning for the benefit of the insolvent laws, held them, subject to this lien. And

3. That this was a lien or incumbrance to be satisfied by the trustee, out of the proceeds of sale, previous to any distribution thereof among the general creditors. He referred to the *fifth* section of the act of congress of the 3d of March 1803, for the relief of insolvent debtors within the District of *Columbia*, ch. 84. *Warden vs. Arell*, 2 *Wash.* 296. *Pierce vs. Turner*, 5 *Cranch*, 154. And *Lambert vs. Paulding*, 18 *Johns. Rep.* 311.

*Magruder*, for the Appellee, cited *Rorke vs. Dayrell*, 4 *T. R.* 402. *Smallcomb vs. Cross*, 1 *Ld. Raym.* 252. 1 *Esp. Dig.* 279, *(392.)* 2 *Selw. N. P.* *(Wheaton's ed.)* 1055, 1056. *Hendricks vs. Robinson*, 2 *Johns. Chan. Rep.* 283, 312. *Lowthal vs. Tonkins*, 2 *Eq. Cas. Abr.* 380, *pl.* 14. *Payne vs. Drewe*, 4 *East*, 523.

BUCHANAN, Ch. J. delivered the opinion of the court. This cause comes up on a case stated, the facts of which are, that at the November term of the *Montgomery* county court, in the year 1817, *The President and Directors of the Union Bank of George Town* obtained several judgments against *George Magruder* for large sums of money; that at the November term of the *Montgomery* county court, in the year 1819, *The President, Directors and Company, of the Bank of Columbia*, obtained a judgment against the said *George Magruder* for a large sum of money, on which judgment a writ of *fieri facias*, returnable to the November term 1820, was sued out on the 8th of March 1820, and on the same day put into the hands of the sheriff; which writ of *fieri facias* was returned by the sheriff, endorsed "laid as per schedule annexed for $958 87½—residue of defendant's property secreted." That at the June term 1820 of the circuit court for *Washington* county, in the District of *Columbia*, *The President, Directors and Company, of the Bank of Washington*, obtained a judgment against the same *George Ma-*

*gruder*, on which a *capias ad satisfaciendum* was sued out, and served upon him by the marshal of the district. That on the 5th of August in the year 1820, he was regularly discharged under the act of congress passed for the relief of insolvent debtors within the District of *Columbia*, and on the same day executed a deed to *George B. Magruder*, (the defendant below and now appellee,) who was appointed his trustee, for all his property, real, personal and mixed, which deed was regularly acknowledged and recorded, both in *Montgomery* county and in the District of *Columbia*. That on the 2d of April 1819, writs of *scire facias* were sued out by *The President and Directors of the Union Bank of George Town*, to revive the judgments they had obtained against *George Magruder* at the November term 1817, on each of which a *fiat* was entered at the November term 1820, on the 14th of that month, and on the same day writs of *fieri facias* were issued and placed in the hands of the sheriff; in virtue of which, on the 1st of January 1821, he seized the property which he had before returned "secreted;" on the *fieri facias* that was issued on the judgment obtained by *The President, Directors and Company, of the Bank of Columbia*. That on the 2d of December 1820, another writ of *fieri facias* was issued on the judgment of the *Bank of Columbia*, which was also levied on the 1st of January 1821, on the same property. That the first execution issued on the judgment obtained by the *Bank of Columbia*, would have been levied upon the property so taken in execution on the 1st of January 1821, in pursuance of instructions given for that purpose, if it could have been found, and that it was secreted after the transfer by *George Magruder* of all his property to *George B. Magruder* as his trustee; that the property thus in the possession of the sheriff, the appellant, was replevied out of his hands by the appellee, who sold it by consent of the counsel on the part of the appellant, and the *Bank of Columbia*, and holds the proceeds, amounting to the sum of $3100, as trustee of *George Magruder*, subject to be distributed according to law. There was a bill of exceptions taken at the trial, which was abandoned; and the case was made to try the question, whether *The President, Directors and Company, of the Bank of Columbia*, by delivery to the sheriff, previous to the application of *George Magruder* for the benefit

of the insolvent laws in the District of *Columbia*, of the *fieri facias* on the judgment they had obtained against him, acquired a lien on that property, which entitled them to be paid the amount of their judgment by the trustee, out of the proceeds of sales thereof, before any distribution among the general creditors; with an agreement, if the court should be of that opinion, that then a judgment should be entered up against the appellee for that sum.

The appellee derived all his authority, as trustee of *George Magruder*, from the insolvent laws of the District of *Columbia*, and must be governed by them in the execution of his trust. The *fifth section* of the act of congress of the 3d of March 1803, *ch.* 84, provides for the sale of the property of petitioning debtors, and directs that "the product thereof, after satisfying all incumbrances and liens, shall be divided among the creditors in proportion to their respective claims."

*The President and Directors of the Union Bank of George-Town*, most certainly acquired no lien on the property in question, by reason of the execution issued on their judgments being placed in the hands of the sheriff on the 14th of November 1820, all the property of *George Magruder* having been antecedently transferred to the appellee by the deed of trust of the 5th of August. But the personal property of a defendant being by the laws of this state bound from the time of the delivery of the writ of *fieri facias* into the hands of the sheriff, *The President, Directors and Company, of the Bank of Columbia*, acquired a lien, by the first execution on their judgment being put into the sheriff's hands on the 8th of March 1820, which was anterior to the application of *George Magruder* for the benefit of the insolvent laws. And the property in question was not discharged from the operation of that lien by the circumstance that the execution was in part levied on other property, because the sheriff was instructed to levy it on that particular property, and endeavoured to do so, but being secreted, he was unable to find it, and was constrained to make return on the writ that it was secreted, which sufficiently explains why it was not also levied on that property. And it would be attended with serious consequences to judgment creditors, if after the whole of a debtor's personal property became bound by delivery of an execution to the sheriff, the debtor, or any body else,

could relieve any portion of it he pleased from the lien, by secreting it, and driving the sheriff to levy the execution only on what might be suffered to remain, no matter how inadequate to the object of the execution.

The provision in the *fifth section* of the law of congress, that "no process against the real or personal property of the debtor shall have any effect or operation, except process of execution, and attachment in the nature of executions, which shall have been put into the hands of the marshal antecedent to the application," cannot be so construed as to nullify the effect of the lien; that *The President, Directors and Company, of the Bank of Columbia*, had acquired, to the extent of their judgment on the personal property of *George Magruder*, before the time of his application, and to divest their debt of the priority which that lien would otherwise have given to it; but the delivery of an execution to the sheriff in this state, having the same effect to create a lien on the personal property of a debtor here; that the delivery of similar process to the marshal has, in relation to personal property within the District of *Columbia*; the sheriff, as the proper officer to execute such process here; must be considered as within the spirit and meaning of the act of congress, and the same preference given to liens, so created on personal property in this state; as to liens created on the same description of property in the District of *Columbia*, by the delivery of the execution to the marshal there. Or if that clause of the act of congress is to be understood as restricted to process issued within the district; and as denying effect and operation to such process only, if not put into the hands of the marshal before the application of the debtor; then the effect of the delivery of process of execution to the sheriff, on property in a state, is left to the operation of the law of such state. If either of these positions be true, the lien of *The President, Directors and Company, of the Bank of Columbia*, on the property of *George Magruder*, was embraced and protected by the general terms, "all incumbrances and liens," and the appellee took it under the deed of trust; subject to that lien, and the priority given to it by that act. And the question here is, whether that priority ceased with the return of the execution?

Whatever might, on general principles, have been the effect of the return of that execution, if *George Magruder*

1825

Selby
vs
Magruder

had not applied for the benefit of the insolvent law, and the contest had been between *The President, Directors and, Company, of the Bank of Columbia,* and some other credi- tor, who had put his execution into the hands of the sheriff before they had sued out another writ of *fieri facias,* this case must be governed by the particular circumstances at- tending it.

If the appellee had sold the property before the return of the execution, *The President, Directors and Company, of the Bank of Columbia,* would have been entitled to have their judgment first satisfied out of the proceeds of sale, they being the only creditors who had acquired a lien. That however was not done, but after the execution of the deed of trust, the particular property in question was secreted and kept out of the way of the sheriff, so that they could not reap the benefit of their lien, by way of execution, and were compelled to look to the trust fund. And if the preference given them by law was defeated by the return of the execution, as is contended, it could not afterwards be revived by issuing and putting into the hands of the sheriff another execution, which could not have the effect to create a lien against the deed of trust; and thus power would be given to trustees, either by negligence, or a gross violation of their trust, always to destroy the legal priority of a creditor who had obtained a lien, without any negligence or fault on the part of such creditor, which can- not be. A trustee under the insolvent law takes the pro- perty subject to all liens, and the preference given by that law to such liens; which preference follows the property as a trust fund, as long as it remains in his hands; he re- ceives it, and holds it as a fund, in trust, by operation of law, first for the payment of the liens existing at the time of the execution of the deed of trust, which right of priority is no more liable to be affected or defeated by the negligence, delay, or acts of the trustee, than if they were claims particularly set out, and a preference expressly given to them in terms by the deed, but the trust being once raised for their payment, it must continue until they are satisfied, or the fund appropriated for that purpose is exhausted. This is just that case, and not like a mere contest between two judgment creditors for a preference under their re- spective executions; but the case of creditors seeking to obtain payment of their debt from a trustee holding pro-

perty in his hands, which was conveyed to him in trust for that purpose; and having had, at the time the trust was created, a lien on the property that gave them in law a priority over other creditors, the trust is virtually, as if it had been expressed to be for the payment, first of that debt setting it out in terms.

We can discover nothing in the record by which that priority has been lost or destroyed, and think that *The President, Directors and Company, of the Bank of Columbia,* are entitled to have the amount of their judgment paid before any distribution is made among the general creditors; the trustee not having it in his power to defeat the object of the trust, by delaying to sell the property, which was kept out of the way of the sheriff, until after the return of the execution, and the trust continuing the same as it was originally created, whether the property was sold or not.

JUDGMENT REVERSED.