JAMES W. McKEE and others, *vs.* The Adminis-
trators of MARGARET R. McKEE and of ALEX-
ANDER McKEE.

Under the Act of 1842, ch. 293, sec. 4, slaves which were the separate
property of the wife, and their increase, born during the life of the wife,
descend, on the death of the surviving husband, to her *children*, without
the necessity of administration on her estate, but the increase born dur-
ing the survivorship of the husband, are his, in absolute right.

Where words used in an Act of Assembly, have received a judicial con-
struction, it is presumed the Legislature employed them in that sense,
unless a contrary intent can be gathered from the whole Act.

APPEAL from the Equity Side of the Circuit Court for
Prince George's county.

The bill in this case was filed on the 13th of April 1861,
by the appellants, as children of Alexander and Margaret R.
McKee, against the appellees, the administrators of the said
Margaret and of the said Alexander.

The bill charges that, in 1845, a judgment was recovered
in the Court of Appeals against the said Alexander and others,
on which a *fi. fa.* was issued and levied upon sundry negroes
of the defendants therein, and that a *vendi exponas* was sub-
sequently issued, under which the sheriff sold negroes Martha,
Charlotte and Sylvia, so levied on, to the said Margaret, as
appears by a copy of said writ and return filed as part of this
bill; that said negroes were so purchased by said Margaret
through the agency of M. B. Carroll, who paid for the same
with moneys in his hands belonging to said Margaret, and the
negroes were thereupon delivered by the sheriff to said Car-
roll, as her agent, and by him were delivered into the posses-
sion of said Margaret, who was then the wife of the said
Alexander, under whose control and direction, as her hus-
band, the negroes came on their delivery, and he, in virtue
of his marital rights, retained possession of the same, con-
trolling and directing their employment and deriving the
profit of their services until his death, in December 1855.

The bill further charges, that the said Margaret died in
1849, intestate, and without having made, in her lifetime,

any disposition of these negroes, whereby they and all their increase devolved on her children, subject only to the right of use and enjoyment thereof by her surviving husband, during his life, and upon his death, said children became entitled to have and claim these negroes and their increase in absolute propriety, and accordingly, after the death of said Alexander, one of said children, for himself and on behalf of his brothers and sisters, took possession of said negroes and their increase, and yet holds possession thereof; that said negroes so purchased as aforesaid, have had numerous increase, viz: Charlotte hath three children, Sylvia five, and Martha seven, and that these negroes are incapable of advantageous partition amongst said children, and that it will be for their interest, and especially of those who are infants, that the same should be sold, and the proceeds distributed amongst said children.

The bill further charges, that two of the defendants claim that they, as administrators of the said Margaret, are entitled to hold and administer said negroes, and that recently, in an action of trover brought against them by the other defendants as administrators of the said Alexander, a recovery has been had against them for a large sum of money, and that they are entitled to the possession of said negroes, to be delivered by them to the administrators of the said Alexander, in satisfaction and discharge of said recovery, but the complainants claim these negroes and their increase directly from their mother, and not through her administrators, so that the recovery against the latter does not conclude or prejudice the rights of the complainants.

The bill further charges, that the recovery against the administrators of said Margaret was had because of the total failure on their part to produce, on the trial of the action against them, duly authenticated transcripts from the records in the Court of Appeals of the aforesaid judgment and executions, which would have fully and conclusively established the title of their intestate, and that said recovery is, in contemplation of law, collusive, fraudulent and void, as against the complainants, and especially such of them as are infants, and as proof that said recovery was had because of the gross

negligence of said administrators, the complainants file with and as parts of their bill, copies of the judgment of affirmance, of the bill of exceptions, and of the opinion of the Court of Appeals in that cause.

The bill further charges, that some agreement or understanding has been made or entered into by and between the administrators of the said Margaret and the administrators of the said Alexander, for the delivery of said negroes by the former to the latter, in satisfaction of the recovery aforesaid, and that said negroes will be so delivered, and by the latter parties will be sold or otherwise disposed of, in utter fraud and disregard of the complainants' rights, unless this court shall interpose for their protection.

The bill then prays that the judgment so recovered by the administrators of the said Alexander against the administrators of the said Margaret, may be declared void and inoperative as against the complainants, and for an injunction restraining the administrators of the said Margaret from delivering to the administrators of the said Alexander, and the latter from recovering possession of said negroes, as well the original stock as the increase thereof, in satisfaction of said judgment, and that all said negroes may be sold under the direction of this court, and the proceeds distributed among the children of the said Margaret, and for general relief.

The court (CRAIN, J.) refused to grant the injunction as prayed; from this refusal the complainants appealed, under Art. 5, sec. 25, of the Code.

The cause was argued before LE GRAND, C. J., TUCK and GOLDSBOROUGH, J.

*Thos. S. Alexander,* for the appellants, argued:

1st. That the right to the negroes in question devolved on the children of Mrs. McKee, immediately after the death of her surviving husband, without the necessity of an administration upon the estate of either the wife or husband. There was no necessity for administration upon the estate of the wife. The Act of 1842, ch. 293, sec. 4, declares, that the

McKee, *et al.*, *vs.* McKee's Admrs.

slaves belonging to the wife, on her death, "shall *descend* and go to her children and their descendants, subject to *the use* of the husband during his life." *Descent* means the falling of property from one to another, without the *intervention* of any other or third party. If administration is necessary under this Act, to vest title in the children of the wife, then it is also necessary to vest title in the *husband*, in case the wife dies childless. Where negroes are limited to one for life, remainder to another, there is no necessity for administration to vest title in the remainder-man upon the death of the life-tenant. The Act of 1810, ch. 34, sec. 4, relating to lapsed legacies, also furnishes an argument by way of analogy. See, also, 7 *G. & J.*, 362, *Glenn vs. Belt.*

2nd. That the defence taken on the trial of the action of trover, having failed because of the omission of the defendants to avail themselves of the evidence of their right, which was within their reach, and conclusive in its character, the verdict and judgment thereon ought not to conclude the children of Mrs. McKee, especially those who are infants. *Story's Eq.*, sec. 894. 2 *Peere Wms.*, 424, *Gainsborough vs. Gifford.* 12 *G. & J.*, 366, *Gardiner, et al., vs. Hardey, et al.*

3rd. That all that it was necessary for the complainants to show, in order to entitle them to the injunction, was, that their mother had the money and purchased the negroes. It is matter of *defence*, if it can be established, that it was not her money, or that the negroes came from the husband's estate, and not a question to be determined upon the hearing of an application for an injunction.

4th. That if the injunction asked for is too broad, as embracing the increase of the negroes born during the survivorship of the husband, it may be modified so as to embrace those only which this court may think the complainants are entitled to.

*Thos. G. Pratt*, for the appellees, argued:

1st. That the court would not be authorized to grant the injunction upon the mere allegations of the bill, not verified by oath, or supported by some other *testimony* sufficient to

satisfy the court of the truth of the alleged equities. *Alex. Ch. Pr.*, 80, 81.

2nd. That the bill must allege all facts necessary to establish the complainants' equity, and where a right, in derogation of the common law, is specially conferred by statute, the party claiming such right must show a concurrence of all the requirements of the statute, as essential to the acquisition of such title. The bill should have alleged that Mrs. McKee was possessed of a separate estate in money, with which she made the purchase, otherwise the money of the wife would belong to the husband, and consequently the negroes purchased would also belong to him. The bill should further have alleged, that such separate estate, in money, was not derived from the husband during coverture, and also that the negroes purchased did not come from the husband after coverture, as the acquisition of a separate estate in the wife, derived from the husband after coverture, is expressly prohibited by the proviso to sec. 1, of the Act of 1842, ch. 293, under the provisions of which statute the complainants claim title. 6 *Md. Rep.*, 381, *Turton vs. Turton.*

3rd. That the bill in reference to the issue of the negro women, should have alleged that they were born after the purchase in 1847, and prior to the death of Mrs. McKee, in 1849, as they certainly did not pass by the sale of their mothers, if they were then born, and as to those who were born during the survivorship of the husband, they belonged to him, even if the Act of 1842, ch. 293, is applicable to the case. *Hammet vs. Herbert*, decided at June Term, 1859. 12 *Md. Rep.*, 294, *Schindel vs. Schindel.*

4th. That if the negroes belonged to Mrs. McKee, they would necessarily go into the hands of her administrators, to be administered by them according to law, *first* to pay debts, and *then* to be delivered to her children and their descendants. The only office of the Act of 1842, in this regard, is to make the personal property embraced in its provisions "descend or go to the children of the wife, instead of the husband." It does not dispense with the necessity of administration, but, on the contrary, recognizes the power of the wife to contract

debts, and the liability of her property for her debts. *Acts of 1842, ch. 293, secs. 4, 8;* and *1798, ch. 101, sub-ch. 5, sec. 8; 11 Md. Rep., 512, Bond vs. Conway.*

5th. That there is no way in which a party entitled to personal property left by a deceased person, can legally recover, either in courts of law or equity, such property, except through administration upon the estate of the deceased party, and consequently the complainants are not entitled to recover upon the hypothesis of their bill. *8 G. & J., 226, Alexander vs. Stewart. 7 G. & J., 367, Glenn vs. Belt. 9 Gill, 121, Anderson vs. Garrett.*

6th. That the title to these negroes was conclusively settled by the suit referred to in the bill between the administrators of the husband and those of the wife, the only parties by whom the question of title could be legally contested. The decision in that case establishes the right of the husband's administrators to the property, and any neglect or omission in the management of that case by the administrators of the wife, would not affect the title of the administrators of the husband, but could only give the complainants a remedy against the administrators of the wife. Otherwise, it would follow that in every case where title to personal property is decided against an administrator for defect of proof, the distributees of his intestate would be entitled to go into equity and have the judgment set aside. *16 Md. Rep., 516, McKee vs. McKee.*

Le Grand, C. J., delivered the opinion of this court.

We are of opinion that the circuit court properly refused the injunction asked for in this case. And this opinion we rest upon the insufficiency of the averments in the bill. Inasmuch as the papers will be returned to the court below, for its further action in the premises, if such should be desired by the complainants, we give a brief statement of the principles which should govern the decision of the case.

The decision depends, principally, on the 4th section of the Act of 1842, chapter, 293, which provides that "in case of the death of the wife her slaves shall descend and go to

her children and their descendants, subject to the use of the husband during his life, without liability to his creditors."

Heretofore the question has been before this court and fully considered, and an opinion prepared by one of its members, (Judge Tuck,) in relation thereto. This was in the case of *Hammett vs. Herbert,* heard and decided at June term 1859. As the court was then constituted, the judges were equally divided in opinion in regard to it, and for that reason, in accordance with the practice of the court, no opinion was filed. The judges who sat in this case, concurring with Judge Tuck in his construction of the Act, adopt his opinion in that case as applicable to this one. It is as follows:

"It is the settled law of this State, that where, by a will or deed, the use of female negroes is limited to one for life or years, the person having such use is entitled to the increase born during the term, upon the principle that, the issue is to be considered, not as accessory, but as part of the use, to go to the person to whom the use is limited. *Hamilton vs. Cragg,* 6 *H. & J.,* 16. Different expressions have been employed but they have received one interpretation. Thus, in *Scott vs. Dobson,* 1 *H. & McH.,* 160, the bequest was to the wife for life, and after her death the negroes were to be divided among others; in *Somerville vs. Johnson,* 1 *H. & McH.,* 352, the bequest was of "the use" of negroes during the life of the legatee; in *Standiford vs. Amoss,* 1 *H. & J.,* 526, the words were similar to those in *Scott vs. Dobson;* in *Hamilton vs. Cragg,* 6 *H. & J.,* 16, the female negro was bequeathed to S. T., "to possess and enjoy during her natural life;" in *Chew vs. Gary,* 6 *H. & J.,* 526, the testator left all his negroes free at his death, except a woman who was "to serve" his mother during her life, and then to be free;" in *Sutton vs. Crain,* 10 *G. & J.,* 458, the testator directed that Mrs. Watts should have the exclusive use of a woman, until the arrival at age of the youngest of her children. In these instances the same effect was ascribed to the words cited. It may be safely assumed that if the language of this Act were part of a will, the husband would be entitled to the increase, born after the coverture; and the sole question is,

whether the rights devolved upon him by the law are more limited than if he claimed in any other manner?

"Where words used in an Act of Assembly have received a judicial construction, it is presumed that the Legislature employed them in that sense, unless a contrary intent can be gathered from the whole Act. The first three sections secure to the wife her own negroes as well as their increase, but by the 4th the husband is to have the control and management of all—the *corpus* as well the issue—and at her death "such slaves," by which is meant the *corpus* and the increase, during the coverture, are to descend and go to her children, "subject to the use of the husband during life, without liability to his creditors;" and this use embraces all the negroes of the wife at the time of her death. The first part of the fourth section does not give to the husband any property in the issue born during the marriage—but it is in terms secured to the wife; nor would the language employed in that part of the section give him any such title, even if the issue had not been secured to the wife; he would have had only a usufructuary enjoyment of the property. *Hope vs. Hutchins*, 9 *G. & J.*, 77. But the legal effect of the words which dispose of the property at the wife's death, is an enlargement of his interest in the property to an absolute title in the increase at that time.

"It was urged in argument that this being a statutory transfer of the title to the children, subject to the use of the husband during his life, the enjoyment of the property mentioned in the previous part of the section, must be taken as the kind of use intended, thereby leaving the issue, after the wife's death, to follow that title. But this is merely speculative as to the meaning of the Legislature, and much might be said on both sides of the question. It is certain that the reasons on which the doctrine, as to the rights of the tenant for life, or years, or of the person entitled to the use of the property for a limited time, was established many years ago, apply with equal force to a person acquiring such interest under the Act of Assembly, as to one claiming under a will or deed. The qualified title is devolved on him by law, by

which he becomes chargeable with the parents, if old and infirm, and may be compelled to support them, and as in the decided cases, the issue is given to him as an indemnity against such loss, so here, the same principle should apply, because the same words are used, without a plain intent to the contrary. The fact that the title is given to others does not affect the decision of the question. In some of the cases referred to, the same fact appeared. The reason of the rule applies alike to all cases where the person claiming the issue has the use of the mother, if a different intention is not manifested.

"The clause exempting the property from liability to the husband's creditors was relied upon; but that applies to the *corpus* and the increase at the time of the wife's death, and not to the issue born afterwards. If the Act had provided that neither the negroes nor the increase born during the husband's enjoyment of the property after coverture, should be liable for his debts, the implication would arise, that the latter was not intended to vest in him absolutely; because it would be impossible to suppose, that the Legislature intended to except the husband's own property from such responsibility."

The Legislature by the adoption of the "Code," have given a similar interpretation to the Act of 1842. By the second section of the 45th Article of the Public General Laws, it is provided, that if the wife "die intestate and leaving children, her husband shall have a life estate in her property, real and personal, but if she die intestate, leaving no children, her husband shall have a life estate in her real property, and her personal property shall vest in him absolutely."

According to this, the issue born of negro women during the ownership of the husband, would, under the well and long established law of this State, become his in absolute right.

As we understand the Act of Assembly, on the death of the husband—he having survived his wife—the negroes which were the separate property of the wife, and those born of them during the lifetime of the wife, "descend" to her children, without the necessity of administration on her estate.

The bill not discriminating as to these different classes of negroes, the injunction could not properly issue, as prayed.

As to whether or not the negroes stated in the bill to have been purchased with the money of Mrs. McKee, for her by Mr. Carroll, were so purchased, we need only to remark, that if the fact is intended to be disputed, the denial must be made in the usual mode of defence. The same remark is applicable to the allegation of fraud. *Grover vs. Glenn*, 3 *Md. Rep.*, 213.

*Order affirmed with costs and cause remanded.*

(Decided October 29th, 1861.)