**In the Matter of Harry H. MEISEL, Bankrupt.**
**No. 10594.**

United States District Court
D. Maryland.
March 3, 1958.

Leon H. A. Pierson, U. S. Atty., and J. Jefferson Miller, II, Asst. U. S. Atty., Baltimore, Md., for the United States.

C. Ferdinand Sybert, Atty. Gen. of Maryland, Theodore C. Waters, Jr., Asst. Atty. Gen. of Maryland, and Edward F. Engelbert, Counsel, Retail Sales Tax Division, Baltimore, Md., for the Comptroller of the Treasury of the State of Maryland.

Harrison M. Robertson, Jr., and Mitchell Stevan, Baltimore, Md., for the trustee.

THOMSEN, Chief Judge.

This petition to review a decision of the Referee herein, filed by the Comptroller of the Treasury, State of Maryland, Sales and Use Tax Division, involves the distribution of the proceeds of sale of the bankrupt's tangible personal property sold by the trustee free and clear of liens.

The Comptroller contends that certain Federal tax liens, which were perfected prior to the State tax lien, are nevertheless subordinated by sec. 67 sub. c of the Bankruptcy Act to the State lien because, he claims, the State acquired possession of the property under a writ of fieri facias prior to bankruptcy. The basic question is: does sec. 67, sub. c alter the priorities between statutory liens recognized by sec. 67, sub. b? 11 U.S.C.A. § 107 subs. b, c.

The facts are undisputed. Federal taxes, in the total amount of $24,689.22, including interest and penalties, were assessed against Harry H. Meisel on various dates between October 6, 1954, and February 1, 1955. Lien notices, in accordance with 26 U.S.C.A. § 6323, were duly filed on February 15 and 16, 1955, as to $21,504.36 of the claim, and on August 11, 1955, as to the remaining $3,-184.86 thereof.

On May 5, 1955, the Comptroller filed a lien notice with the Clerk of the Circuit Court for Anne Arundel County for unpaid sales and use taxes due by Meisel for the period March 1, 1949 to February 28, 1955, in the amount of $13,554.57, in-

cluding interest and penalties. On December 30, 1955, the Comptroller ordered the Clerk to issue a writ of fieri facias on said lien and directed the Sheriff of Anne Arundel County to seize certain chattels belonging to Meisel. On January 4, 1956, the Sheriff levied on said chattels, scheduled them, and left them in the possession of Meisel as custodian for and on behalf of the Sheriff. Meanwhile, four of Meisel's creditors had secured judgments against him in the Circuit Court for Anne Arundel County and had caused writs of fieri facias to issue, one returnable to the January, 1955, return day and three to the January, 1956, return day. The numbers on these writs indicate that they were all issued before the Comptroller's writ was issued and were served before it was served. The Sheriff scheduled the same items of personal property in his returns on all five writs. Some of the items so scheduled came into the possession of the trustee and were sold by him in this bankruptcy proceeding; some of the personal property acquired and sold by the trustee was not included in the schedules filed by the Sheriff.

Meisel filed his petition in bankruptcy and was adjudicated a voluntary bankrupt on January 16, 1956. The trustee applied to the Referee for authority to sell the tangible assets of the bankrupt free and clear of all liens. In response to a show cause order, the Comptroller consented to the sale, provided his lien would attach to the proceeds of sale and would be accorded the same priority it would have enjoyed if the Comptroller had ordered the sale upon foreclosure of the lien. Thereafter, the Referee authorized and directed the trustee to sell, free and clear of any and all liens, the inventory and equipment of the bankrupt's estate. The order provided that any and all liens duly asserted against the property within the time and in the manner provided by law be transferred to the net proceeds realized at the sale of said property. The sale netted $7,200. The Referee held a hearing in July, 1957, to determine the extent, validity and relative priority of lien claims filed by the United States and by the Comptroller respectively; no other creditors have claimed any lien on the proceeds of sale.

On July 30, 1957, the Referee ordered "that the District Director of Internal Revenue be and he is hereby declared to have a valid lien claim for unpaid taxes, interest and penalties in excess of the amount of money realized by the Trustee and such lien being prior in time is entitled to be paid prior to the lien claim of the Comptroller of the Treasury of the State of Maryland, Retail Sales Tax Division but shall be postponed in payment to debts entitled to priority under Section 64 [, sub.] a(1) and (2) of the Bankruptcy Act" (in this case, administrative expenses, since no wage claims have been filed). The Referee based his decision on California State Department of Employment v. United States, 9 Cir., 210 F.2d 242.

Sec. 64 of the Bankruptcy Act, 11 U.S.C.A. § 104, provides for priorities among unsecured creditors; it does not deal with priorities among holders of valid liens.

Sec. 67, sub. b of the Bankruptcy Act, 11 U.S.C.A. 107, sub. b, provides: " * * * statutory liens for taxes and debts owing to the United States or to any State or any subdivision thereof, created or recognized by the laws of the United States or of any State, may be valid against the trustee, even though arising or perfected while the debtor is insolvent and within four months prior to the filing of the petition initiating a proceeding under this title by or against him * * *." Federal and State liens are placed in the same category. The general rule is that the liens which are perfected first, in this case the Federal liens, take precedence over other liens. State of Michigan v. United States, 317 U.S. 338, 340, 63 S.Ct. 302, 87 L.Ed. 312; United States v. City of Greenville, 4 Cir., 118 F.2d 963.

The Comptroller concedes for the purposes of this appeal that prior to

bankruptcy the State liens were subordinate to the Federal liens.[1] He argues, however, that after bankruptcy the State liens became superior to the Federal liens by virtue of the State's possession of the bankrupt's personal property under the fi. fa.

The State did not have actual possession of the property. In view of the fact that the personal property levied on by the Sheriff under the State's writ had already been levied on by him under four other writs issued before the State's writ was issued, one of them before notice of the State's lien was filed, there is considerable doubt whether the property was even in the constructive possession of the State. Certainly any constructive possession which the State had was subject to the constructive possession or rights of the judgment creditors who had caused the earlier writs to be issued.[2] Poe, Pleading and Practice (Tiffany ed.), vol. 2, sec. 667; United States v. Levin, D.C.Md., 128 F.Supp. 465. See also Poe, op. cit. vol. 2, sec. 631; First National Bank v. Corporation Comm. of North Carolina, 161 Md. 508, 157 A. 748, 81 A.L.R. 1407; 14 Md.L.Rev. 211, 212. But for the purposes of this discussion, I will assume without deciding that the State had such possession of the property as would satisfy sec. 67, sub. c(1), 11 U.S.C.A. § 107, sub. c(1).

The Comptroller's argument runs as follows: Sec. 67, sub. c, 11 U.S. C.A. § 107, sub. c, subordinates liens unaccompanied by possession to administrative expenses and wages under sec. 64, 11 U.S.C.A. § 104. The Federal lien, being unaccompanied by possession, is thus subordinated. The State lien, on the other hand, being accompanied by possession, is not subordinated. Therefore, the Federal lien is subordinate to the State lien.

This argument has been rejected by the Courts of Appeals of two circuits. In California State Dept. of Employment v. United States, 210 F.2d 242, 244, the Ninth Circuit said: "From a consideration of both the language used in the Act and the legislative history we are persuaded that § 67, sub. c does not affect or impair the priorities of liens recognized by § 67, sub. b. The relevant part of § 67, sub. c provides that ' * * * statutory liens, including liens for taxes or debts owing to the United States or to any State * * * on personal property not accompanied by possession of such property * * * shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision a of section 64 of this title * * *.' 11 U.S.C.A. § 107, sub. c. The section deals only with the relationship of the lienholder without possession to *unsecured* creditors having priorities under § 64, sub. a. It does not attempt to deal with priorities as between *secured* creditors under § 67, sub. b. Reconstruction Finance Corp. v. Sun Lumber Co., 4 Cir., 1942, 126 F.2d 731. As pointed out by

---

1. The Comptroller based his petition for review on two grounds, but for the purposes of this appeal he has abandoned the first: that "the Comptroller's lien is superior to the lien of the District Director of Internal Revenue for the reason that the latter, though recorded prior in point of time to the Comptroller's lien, does not attach to personal property until levy is effected; and that the Comptroller's lien, perfected through levy and possession of the goods, must therefore prevail." In any event, this ground is without merit, for reasons stated in United States v. Levin, D.C. Md., 128 F.Supp. 465, and the authorities cited therein at pp. 468, 469. The State lien in this case had the force and effect of a lien of judgment. Ann. Code Md. 1957, art. 81, sec. 342(b).

2. The trustee in bankruptcy contends, inter alia, that his right to the proceeds is superior to that of the Comptroller "because of the trustee's right of subrogation to the prior judgment liens under sec. 67, a(3) of the Bankruptcy Act". 11 U.S.C.A. § 107, sub. a(3). In view of my decision herein, it is not necessary to rule on this point, nor on another point urged by the trustee, namely: that "any lien the Comptroller acquired upon property of the Bankrupt extends only to property described with reasonable certainty upon the schedule filed with the Sheriff's return and identifiable with property sold by the Trustee".

Collier on Bankruptcy, 14th Ed., Vol. 4, p. 242, '§ 67 [sub.] c does not, nor does any other provision of the Bankruptcy Act for that matter, set up any scheme of priorities among liens.' Thus we see that statutory liens unaccompanied by possession of the personal property to which they attach are postponed in payment only to the two claims specifically mentioned, viz. wages and expenses of administration. The state tax liens are not within either of these two classes.

"From the legislative history it appears that the sole concern of Congress in enacting § 67, sub. c was to insure payment of administrative expenses and small wage claims. Goggin v. Division of Labor Law Enforcement of California, 1928, 336 U.S. 118, 127, 69 S.Ct. 469, 93 L.Ed. 543 citing Committee Report Analysis of H.R. 12889, 74th Congress, 2d Sess. (1936) and Wienstein, The Bankruptcy Law of 1938 (1938). Prior to the Act of 1938 all liens valid in bankruptcy had precedence over unsecured creditors having only priority claims under § 64, sub. a. Liens in favor of contractors, materialmen, and particularly accumulated tax liens, frequently consumed the bankrupt's estate to the exclusion of the costs and expenses of administration incurred in the proceeding. To insure payment of administrative expenses and wage claims Congress decided to subordinate statutory liens to a limited extent, that is, to unsecured claims having a first and second priority under § 64, sub. a, Collier on Bankruptcy, 14th Ed., Vol. 4, par. 67.20. We find no suggestion that Congress intended by § 67 sub. c to permit a subordinate lienholder who secures possession of personal property prior to bankruptcy to thus place himself in a superior position to an otherwise prior and superior lienholder. See, Reconstruction Finance Corp. v. Sun Lumber Co., 4 Cir., 1942, 126 F.2d 731."

The Ninth Circuit concluded: "In determining the distribution of the proceeds in the hands of the trustee, the lien priorities under § 67, sub. b should be resorted to before considering § 67, sub. c. Since under § 67, sub. b the Government liens are superior to the state liens, a sum equal to the government claim should be set aside from the proceeds and the remainder, if any, should be applied to the state tax liens. In the instant case the State takes nothing since it appears from the record that the claim of the Government exceeds the proceeds realized from the sale of the bankrupt's estate. The Government liens unaccompanied by possession of the bankrupt's personal property are subordinated by § 67, sub. c to the expenses of administration. Hence, administrative expenses must be satisfied out of the sum set aside for the Government claim."

Applying that conclusion to the instant case, the order of payment would be: (1) administrative expenses; (2) the Federal tax liens, reduced by the amount of the administrative expenses; (3) the State tax liens; (4) the balance of the Federal tax liens; (5) other claims in the order of their priority, including claims for Federal and State taxes as to which a lien had not been perfected.

In Re Quaker City Uniform Co., 238 F.2d 155, certiorari denied 352 U.S. 1030, 77 S.Ct. 595, 1 L.Ed.2d 599, the Third Circuit also flatly rejected the Comptroller's argument. Indeed, it went further, and questioned the conclusion of the Ninth Circuit that the superiority of the Federal lien over the State lien should be defeated to the extent of the amount of the administrative expenses; but since in the Quaker City case the administrative expenses and the wage claims consumed the entire estate, it was not necessary for the Third Circuit to decide that question.

Neither the decision nor the footnotes in Goggin v. California Labor Division, 336 U.S. 118, 69 S.Ct. 469, 93 L.Ed. 543, relied on by the Comptroller, deals with the problem we are considering here. The true holding of the Goggin case was explained and followed by the Ninth Circuit. The Comptroller also relies on a dictum of the Fifth Circuit in City of New Orleans v. Harrell, 134 F.2d 399. This dictum, however, was expressly disapproved by the Third Circuit, In

884

re Quaker City Uniform Co., 238 F.2d at page 159.

The opinions of the Ninth and Third Circuits are persuasive, and are supported in their conclusion as to the purpose of sec. 67, sub. c by the opinion of the Fourth Circuit in Reconstruction Finance Corp. v. Sun Lumber Co., 126 F.2d 731, 739. Surely, if Congress had intended to change the long-established first-in-time rule for establishing priorities among liens under sec. 67, sub. b, it would have said so plainly, and would not have left the matter to inference.

Whether the views of the Ninth Circuit or of the Third Circuit are followed, the order of priority herein should be (1) administrative expenses, and (2) the Federal lien. Since the amount of the Federal lien reduced by the amount of the administrative expenses will consume the entire fund, it is not necessary to decide in this case whether the entire Federal lien is entitled to priority over the State lien, or whether the rule of the Ninth Circuit should be followed.

The decision of the Referee is affirmed.