LIQUOR DEALERS CREDIT CONTROL, INC. *v.*
COMPTROLLER OF THE TREASURY,
STATE OF MARYLAND

[No. 188, September Term, 1965.]

*Decided March 9, 1966.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*Jerome H. Markoff* for appellant.

*Thomas P. Perkins, III, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Edward F. Engelbert, Chief, Retail Sales Tax Division, Bernard F. Moan, Assistant General Counsel, Retail Sales Tax Division* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court. BARNES, J., dissents. Dissenting opinion at page 662, *infra.*

The question presented on this appeal is whether the filing of a notice of lien for sales taxes has the force and effect of a lien of judgment against the personal property of the tax debtor absent a prior levy thereon under a writ of execution issued by the tax creditor.

The appellee (Comptroller of the Treasury of the State of Maryland) filed a lien for sales taxes with the clerk of the Superior Court of Baltimore City on January 15, 1960, against Allen Dagurt, trading as Pearl Cafe and Restaurant, in the

aggregate sum of $1112.74. The lien was based on the assessment of August 28, 1959, for the period from January 1958 through July 1958, in the sum of $912.43, including interest and penalties, and on the assessment of January 8, 1960, for the period from July 1, 1959, through November 30, 1959, in the sum of $200.31, including interest and penalties.

The appellant (Liquor Dealers Credit Control, Inc.) obtained a summary judgment for $3280.94 and costs of suit on January 20, 1960, and forthwith directed the issuance of execution. The tax debtor executed a deed of trust for the benefit of creditors on February 15, 1960, and the equity court assumed jurisdiction over the trust estate on the following day. In May of 1960, the appellee filed its claim for sales taxes totaling $1186.29. This sum was made up of the two tax assessments aggregating $1112.74 set forth in the previously filed tax lien and an additional assessment in the sum of $73.75 made on May 11, 1960. No lien was claimed for the additional assessment. In June of 1964, the appellant filed its petition for a priority based on its judgment and execution.

The assets of the trust estate, consisting of personal property only, were sold for cash and, after payment of the trustee's commissions, court costs and administration expenses, there was only $1542.13 for distribution to the creditors. The auditor allowed the whole of this sum to the judgment creditor and the tax creditor filed exceptions to the audit. The chancellor, in sustaining the exceptions, directed the auditor to restate the account by distributing $1112.74 to the tax creditor and the balance to the judgment creditor after payment of the additional costs.

A determination of the controversy as to which claimant is entitled to priority necessarily requires a construction of § 342(b)[1] of Article 81 of the Code of 1957 which, as amended by Chapter 91 of the Acts of 1958, effective June 1, 1958, now provides:

"The tax, and all increases, interests and penalties thereon shall be a lien upon *all* the property, *real*

---

1. The wording of § 342(b), applicable to the sales tax, and in § 393(b), applicable to use taxes, is the same, but we are here concerned only with a lien for sales tax.

*and/or personal,* of any person liable to pay the same to the State from and after the time when notice has been given that such tax has become due and payable as provided herein. Notice of such lien shall be filed by the Comptroller with the clerk of the circuit court of the county in which said property is located, or if located in Baltimore City, with the clerk of the Superior Court of Baltimore City. Each clerk of court shall accurately and promptly record and index all such notices of lien filed with him by the Comptroller and shall enter such lien in the judgment docket of the court, stating the name of the delinquent taxpayer, the amount of the lien and the date thereof. The lien provided for in this section shall have THE FULL FORCE AND EFFECT OF A LIEN OF JUDG-MENT. Unless another date is specified by law, the lien arising at the date of nonpayment as in this section specified and provided for, shall continue with the same force and effect as a judgment lien. *Any such lien on personal property shall not be effective as against an innocent purchaser for value unless the personal property has been levied upon by an officer of a court."*

Several months before the enactment of the amendment, when the statute simply provided that the tax should be a lien on "the property" of the taxpayer, the Circuit Court for Prince George's County (*per* Marbury, J.)[2] had occasion to rule,[3] in a case concerning a question of priority between the Comptroller of the Treasury and the United States of America, that the sales tax lien did not extend to personal property. As a result of the ruling the statute (formerly § 338) was amended by adding the italicized portions set forth above.

Although the appellant does not claim that it comes within

2. Judge Charles C. Marbury is now an associate member of this Court.

3. The opinion of the court is on file in the case of John R. Fletcher, et al v. Air Conditioning, Inc., and United States of America, Equity No. A-7484, and also appears at 58-1 USTC No. 9310.

the exception granted by the statute to an "innocent purchaser for value" and concedes that the tax lien was properly filed prior to the time it obtained judgment and issued execution thereon, it contends that the statute did not relieve the appellee of the requirement of issuing an execution in order to perfect its lien and entitlement to priority over the appellant. We do not agree for several reasons.

In the first place, it is apparent that the legislature intended to create a perfected tax lien. The introduction of the clarifying amendment immediately after the rendition of the court ruling, together with the unequivocal declaration in the title to the bill that the tax lien should "apply to both real and personal property," makes it clear that it was the intention of the legislature to remove all doubt that the lien attached to personal as well as real property upon the filing of notice with the clerk of court that the tax was due and payable. Any other construction would be unreasonable under the circumstances. *Height v. State,* 225 Md. 251, 170 A. 2d 212 (1961). In addition to this, it is just as clear that there would have been no reason to except an innocent purchaser for value from the effect of the lien if the legislature had intended that issuance of an execution was necessary in order to perfect the tax lien. As was pointed out in *Smith v. Higinbothom,* 187 Md. 115, 48 A. 2d 754 (1946), if a word or clause in a statute is susceptible of more than one interpretation, the court should endeavor to ascertain the legislative intention by considering the reason for the enactment and the objective intended to be accomplished and adopt the meaning which will carry out the legislative purpose.

The statutory clause (printed above in boldface) giving the lien "the full force and effect of a lien of judgment" had the effect, not of requiring the lien creditor to issue an execution in order to perfect its tax lien, but of giving the lien entered on the judgment docket the same force and effect as the lien of a judgment on which an execution had been issued. While it is generally true that the obtention of a judgment does not create a lien on the personal property of the judgment debtor, *Harris v. Max Kohner, Inc.,* 230 Md. 349, 352, 187 A. 2d 97 (1963), and that the lien of a judgment does not ordinarily fasten to personal property until the writ of *fieri facias* is de-

livered to the sheriff, *Prentiss Tool & Supply Co. v. Whitman & Barnes Mfg. Co.,* 88 Md. 240, 41 Atl. 49 (1898),[4] there was no reason why the legislature (as the Congress had previously done with respect to taxes due the federal government) could not create a tax lien in favor of the State of Maryland on personal as well as real property of a tax debtor by providing that such lien shall attach (except as to an innocent purchaser for value) upon the giving of notice to the taxpayer by the filing thereof with the clerk of court to be entered in the judgment docket.

Since a lien predicated upon the rendition or entry of a judgment did not exist at common law, a judgment is not, in and of itself, a lien on either real or personal property. The right a judgment creditor has to a lien is therefore wholly statutory. *Caltrider v. Caples,* 160 Md. 392, 394, 153 Atl. 445 (1931). Furthermore, a judgment creates a lien on real property (and certain leasehold estates) only because the land is made liable, formerly by statute but now by rule, to be seized and sold on execution. *Messinger v. Eckenrode,* 162 Md. 63, 158 Atl. 357 (1932). By the same token, an execution is a lien on personal property only because the property can be sold in satisfaction of the execution. *Jordan v. Reynolds,* 105 Md. 288, 66 Atl. 37 (1907). And it was said in *Lee v. Keech,* 151 Md. 34, 133 Atl. 835 (1926), that the statutory lien of a judgment creditor is in the nature of a remedy rather than of an estate and as such is subject to legislative control and may be changed by statute without violating any constitutional inhibition. Moreover, the statutes of some states provide for a lien on personal property upon the filing of a satutorily prescribed certification in the office of certain courts. See 2 Freeman on Judgments § 938 (5th ed.). And in this state, it has always been recognized that personal property may be sold to satisfy a lien for taxes without the formality of issuing execution. In this connection, we note in *Eschbach v. Pitts,* 6 Md. 71 (1854), that Chapter 63 of the Laws of 1840, authorizing the Mayor and City Council of Baltimore to provide by ordinance for the sale of real as

---

4. See generally 2 Poe, Pleading and Practice, § 666, and the comprehensive list of cases cited by Prescott, J. (now C. J.) in Harris v. Max Kohner, Inc., at p. 353 of 230 Md.

well as personal property for the payment of taxes was said to have had the effect of also making the taxes a lien on the realty.

The final claim of the appellant that the lower court gave retroactive effect to § 342(b) as amended by Chapter 91 of the Laws of 1958 is likewise without merit. On this point, since the basic question is whether the appellee had priority over the appellant, the record shows that the liens for taxes (both of which were assessed after the effective date of the amendment) were filed and recorded on January 15, 1960, five days before obtention of judgment and issuance of execution by the appellees on January 20, 1960.

We hold that the sales tax liens of the appellee had priority over the execution on the summary judgment of the appellant.

*Order affirmed; appellant to pay the costs.*

BARNES, J., filed the following dissenting opinion.

I dissent because in my opinion the majority has not properly construed Code (1957) Article 81, Section 342(b), as amended by the Acts of 1958, Chapter 91.

As is pointed out in the majority opinion the *purpose* of the amendatory language in the Acts of 1958, Chapter 91 was to make it clear that the lien provided for in Section 342(b) would apply to *personal property* as well as to real property, Judge Charles C. Marbury having ruled at *nisi prius* that it did not apply to personalty. This is quite clear from the title to Chapter 91 which states, *inter alia,* that the act is one "* * * providing that the lien created by the Retail Sales Act shall apply to *both* real and *personal* property" (emphasis supplied). The words added to the first part of the statute were "all" and "real and/or personal" so that the language was "shall be a lien upon *all* the property, *real and/or personal,* of any person liable to pay the same * * *." (Emphasis supplied). It is quite important to observe that the existing language of the statute stating the effect of the lien created by the original statute, i.e., "The lien provided for in this section shall have the full force and effect of a lien of judgment", was not changed in any way.

Then was added by Chapter 91 the sentence at the end of Section 342(b) which reads: "Any such lien on personal property shall not be effective as against an innocent purchaser for value unless the personal property has been levied upon by an officer of a court."

The legislative intent is to be ascertained by a careful reading of the language used by the General Assembly in the legislation itself.

As we said in *Welsh v. Kuntz,* 196 Md. 86, 93, 75 A. 2d 343, 345 (1950):

> "The cardinal rule of statutory construction is that statutes should always be construed to effectuate the intention of the Legislature. The manifest intention will always prevail over the rules of grammatical construction. On the other hand, *a court is generally not at liberty to surmise a legislative intention contrary to the plain language of the statute, or to indulge in the license of inserting or omitting words with the view of making the statute express an intention which is not evidenced in the original form."* (Emphasis supplied).

As I see it, the majority has, in effect, added seven unstated words after the words "shall have the full force and effect of a lien of judgment", i.e., "on which an execution had been issued." Their absence from the legislation clearly indicates to me that the General Assembly meant exactly what it said when it stated that the lien should have the "full force and effect of a lien of judgment", namely, that the lien was the one established for judgments under the existing Maryland law. This law is fully analyzed and well stated by Judge (now Chief Judge) Prescott, for the Court, in *Harris v. Max Kohner, Inc.,* 230 Md. 349, 352-354, 187 A. 2d 97, 98-99 (1963) as follows:

> "The appellee concedes, as it of course must, that the obtention of judgment, alone, creates no lien upon a judgment debtor's personal property. Cf. Maryland Rule 620 (September 1958 Ed. in force as of November 28, 1961). In the instant case, however, Kohner

had not only secured a judgment, but had also obtained a writ of *fieri facias* and placed it in the hands of the Chief Constable. At common law, when an execution was issued, it became a lien upon and bound the debtor's goods by relation from the test-day of the writ. *Jones v. Jones,* 1 Bland 443, 448. This principle frequently worked hardship upon an innocent purchaser of goods from a judgment-debtor, who bought them in the interval between the *teste* of the writ and the day on which it was given to the sheriff to be executed. To remedy this, it was enacted in the Statute of Frauds, 29 Ch. 2, Chapter 3, Section 16, 'that * * * no Writ of *Fieri facias* * * * shall bind the Property of the Goods against whom such Writ of Execution is sued forth, but from the Time that such Writ shall be delivered to the Sheriff, Under-Sheriff or Coroners, to be executed: * * *.' 2 *Alexander's British Statutes* (Coe's Ed.), 511, 512, 551, 552. This statute is in force in Maryland.

"Professor Poe says:

'The meaning and effect of this statute are that *until the writ is actually delivered to the sheriff,* the defendant may lawfully and validly sell or otherwise dispose of his goods; and his assignee acquiring title in good faith will be protected against the execution-creditor. But *after the writ is once delivered* to the sheriff, the goods are virtually in the custody of the law, and are made subject to the lien of the execution. Accordingly, an assignee or purchaser from the debtor then buys them at his peril, for it will be the right and the duty of the sheriff to seize and sell them under the *fi. fa.,* notwithstanding the alienation by the judgment-debtor in the interval between the delivery of the writ to the sheriff and the actual levy.'

2 Poe, *Pleading and Practice,* § 666. Mr. Evans gives practically the same interpretation of the statute at pp. 478 and 479 in his *Maryland Practice* (1867). And dating the inception of a lien upon a judgment debtor's personalty from the time a writ of *fi. fa.* is

delivered to the sheriff for execution seems to be the prevailing view throughout this country, although there are a few States, which, usually by statutory enactments, date the inception of the lien from the time the property is seized and not before. 30A Am. Jur., *Judgments,* §522; 33 C.J.S., *Executions,* §124.

"The above statement of Professor Poe should, perhaps, be qualified by adding that the lien on the judgment debtor's goods attaches only to goods located within the sheriff's bailiwick. And the delivery of the writ to the sheriff must be made, in good faith, for the purpose of its execution. *Myers Co. v. Banking & Trust Co.,* 170 Md. 198, 183 A. 543. We are not called upon at this time to consider what happens to the writ after its return date.

"An unbroken chain of decisions of this Court supports the interpretation given to the statute by Professor Poe and Mr. Evans. *Jones v. Jones, supra; Selby v. Magruder,* 6 Har. & J. 454; *Harris v. Alcock,* 10 G. & J. 226, 251; *Furlong v. Edwards,* 3 Md. 99, 113; *Prentiss Co. v. Whitman & Barnes Co.,* 88 Md. 240, 243, 41 A. 49. See also *United States v. Levin,* 128 F. Supp. 465 (U.S. D.C., Md., opinion by Thomsen, J.) and *In Re Continental Midway Corporation,* 185 F. Supp. 867 (U.S. D.C., Md., opinion by Chesnut, J.) both stating Maryland law. And cf. *Meyers Co. v. Banking & Trust Co., supra.*

"In *Furlong,* this Court stated: 'The position assumed by the learned judge who delivered the opinion below, as respects *the time* when the creditor acquires his lien, is in our judgment erroneous. * * * The case of *Harris v. Alcock* [*supra*], in our own court expressly decides, that the issuing and levying of a *fieri facias,* secures for the creditor a priority or lien upon the debtor's equitable interest in personal property covered by a mortgage, *which lien dates from the time the execution was placed in the officer's hands.'* "

We must assume that the General Assembly originally enacted Section 342(b) and amended it by Chapter 91 with

knowledge of this long and clearly established Maryland law. As our predecessors said in *McKee v. McKee,* 17 Md. 352, 359:

> " 'Where words used in an Act of Assembly have received a judicial construction, it is presumed that the Legislature employed them in that sense, unless a contrary intent can be gathered from the whole Act.' "

See *Kepner v. U. S.,* 195 U. S. 100, 124, 24 S. Ct. 797, 49 L. Ed. 114 (1904). See also 82 C.J.S. *Statutes* §330, page 653.

If the language used were of doubtful meaning or was ambiguous, we should construe it in favor of the taxpayer and against the State. As we stated in *Comptroller v. Rockhill, Inc.,* 205 Md. 226, 234, 107 A. 2d 93, 98 (1954) :

> "In interpreting a tax statute, the court must not extend its provisions by implication beyond the clear import of the language employed. Such a statute, in case of doubt as to its scope, should be construed most strongly in favor of the citizen and against the State."

See also *Baltimore Foundry and Machine Corporation v. Comptroller,* 211 Md. 386, 319, 127 A. 2d 368, 369 (1956).

The majority states that "the legislature intended to create a perfected tax lien" and that "Any other construction would be unreasonable under the circumstances." I suggest, with great respect, that this begs the question. The General Assembly *did not state* that it was *creating a perfected lien,* but that it was creating a lien having the full force *and effect of a lien of judgment.* What could be clearer from this language than that as to the newly added personalty, there was no perfected lien until delivery of the writ of *fieri facias* or other process to the officer of the court for levy? The General Assembly clearly had the necessity for a levy in mind as the last sentence indicates. The majority states, in effect, that unless the lien on personalty was *perfected* upon filing of the notice of the lien with the clerk, the last sentence added by Chapter 91 would have no meaning. But in my opinion, this is by no means the case. On the contrary, the last sentence confirms the existing Maryland law in

regard to liens of a judgment so far as personal property was concerned, namely, that there is *no lien* until the process of writ for the levy is delivered to the levying officer at which time an *inchoate* lien arises as to personal property within the levying officer's bailiwick, to become *consummate* when the levy is actually made. See *In re Continental Midway Corporation,* 185 F. Supp. 867, 873 (D. Md. 1960, Chesnut, J.) and the excellent review of the Maryland law in that case. As Judge Prescott pointed out, for the Court, in *Harris* in his quotation from *Poe on Pleading and Practice,* set out above, the purchaser from the debtor purchased the personal property *at his peril* "in the interval between the delivery of the writ to the sheriff and the actual levy."

It was to eliminate this inequitable situation which existed and still exists generally in regard to innocent purchasers for value in this interval between delivery of the writ and the levy, that the last sentence was added by Chapter 91. This language is entirely consistent with the existing Maryland law and has an important meaning quite apart from any notion that there is any lien on personalty until the time the Comptroller has issued an execution upon the lien filed with the Clerk.

In my opinion, there is no indication in Chapter 91 that there was to be *any change* in the Maryland law in regard to the effect of a lien of judgment as it applied to personal property and all of the language is entirely consistent with the legislative intent that there was to be no change in that law. I would so rule.

In addition to the language of the statute, itself, it seems apparent to me that the Comptroller, prior to the enactment of Chapter 91, when he considered that the words "all property" in the then existing legislation *included personal property,* he construed the language "shall have the * * * effect of a lien of judgment" as requiring a levy to establish the State's lien. See *In re Meisel,* 159 F. Supp. 879 (D. Md. 1958). Chief Judge Thomsen for the United States District Court for the District of Maryland, after stating that the Comptroller had filed a lien notice with the Clerk of the Circuit Court for Anne Arundel County for unpaid sales and use taxes on May 5, 1955, ordered the Clerk on December 30, 1955 to issue a writ

of *fi. fa.* on the lien directed to the Sheriff of Anne Arundel County to seize certain chattels belonging to the debtor, which levy was made by the Sheriff on January 4, 1956, stated in Note 1 on page 882 of 159 F. Supp.

> "The Comptroller based his petition for review on two grounds, but for the purpose of this appeal he has abandoned the first: that 'the Comptroller's lien is superior to the lien of the District Director of Internal Revenue for the reason that the latter, though recorded prior in point of time to the Comptroller's lien, *does not attach to personal property until levy is effected;* and that the Comptroller's lien, *perfected through levy and possession of the goods, must therefore prevail.'* In any event this ground is without merit for reasons stated in *United States v. Levin,* D. C. Md., 128 F. Supp. 465 and the authorities cited therein at pp. 468, 469. The State lien in this case had the force and effect of a lien of judgment. Ann. Code, Md. 1957, Art. 81, Sec. 342(b)." (Emphasis supplied).

This case indicates that the Comptroller's construction of the applicable language of Section 342(b) and of the necessity of a levy to make consummate the *inchoate* lien arising upon delivery of the writ of *fi. fa.* was in accord with what, in my opinion, is the proper construction of the language in Section 342(b). This prior construction by the Comptroller of the language is significant. Cf. *Comptroller v. Rockhill, Inc., supra.*

I would reverse the order of the lower court.